09-CV-05761-CMP  1-50

FILED _____ LODGED
_____ RECEIVED

DEC 0 9 2009

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### AT TACOMA

|  |  |
|---|---|
| MICHAEL ALEXANDER FRIEDMANN, an individual, | Case No.: |
| Plaintiff, | C09 5761 RJB/KLS |
| v. | COMPLAINT FOR DAMAGES |
|  | (Civil Rights, Personal Injury, Jury Trial Demanded) |
| The STATE OF WASHINGTON, WASHINGTON STATE PATROL, a Washington State Agency, CHRISTINE GREGOIRE and "JOHN DOE" GREGOIRE, CHIEF JOHN BATISTE and "JANE DOE" BATISTE, SERGEANT TOM OLSEN and "JANE DOE" OLSEN, SERGEANT SAM E. RAMIREZ and "JANE DOE" RAMIREZ, SERGEANT TOM MARTIN and "JANE DOE" MARTIN, DETECTIVE JULI GUNDERMAN, formerly Juli Mitchell and | |

COMPLAINT FOR DAMAGES - 1

1  "JOHN DOE" GUNDERMAN, TROOPER )
2  NICHOLAS CASTO and "JANE DOE" )
3  CASTO, TROOPER JAMES MELDRUM )
4  and "JANE DOE" MELDRUM, TROOPER )
5  CHRISTOPHER NOLL and "JANE DOE" )
6  NOLL, TROOPER ROBERT E. HOWSON )
7  and "JANE DOE" HOWSON, MICHAEL )
8  HOPKINS and "JANE DOE" HOPKINS, )
9  LIEUTENANT SEAN HARTSOCK and )
10  "JANE DOE" HARTSOCK, STEVEN )
11  OSTRANDER and "JANE DOE" )
12  OSTRANDER, TERRY FRANKLIN and )
13  "JANE DOE" FRANKLIN, LIEUTENANT )
14  JULIE JOHNSON and "JOHN DOE" )
15  JOHNSON, the latter, all respectively, )
16  husband and wife, )
17  )
18  Defendants. )
19  )
20
21
22  COMES NOW, plaintiff, Michael Alexander Friedmann, an individual, and brings this
23  action against defendants named herein. Plaintiff alleges the following on information and
   belief:
24
25

## I. PLAINTIFFS AND DEFENDANTS

**1.1**    Plaintiff Michael Alexander Friedmann is an individual residing at all times material herein, in Pierce County, Washington, and owning both corporate entities Washington State Police Investigations Commission and Praetorian Security Consulting, additionally affected by the actions of the defendants herein named.

**1.2**    Defendant Washington State Patrol is a Washington State Agency.

**1.3**    Defendants Christine Gregoire and "John Doe" Gregoire, and Chief John Batiste and "Jane Doe" Batiste, and Sergeant Tom Olsen and "Jane Doe" Olsen, and Sergeant Sam E. Ramirez and "Jane Doe" Ramirez, and Sergeant Tom Martin and "Jane Doe" Martin, and Detective Juli Gunderman, formerly Juli Mitchell and "John Doe" Gunderman, and Trooper Nicholas Casto and "Jane Doe" Casto, and Trooper James Meldrum and "Jane Doe" Meldrum, and Trooper Christopher Noll and "Jane Doe" Noll, and Trooper Robert E. Howson and "Jane Doe" Howson, and Michael Hopkins and "Jane Doe" Hopkins, and Lieutenant Sean Hartsock and "Jane Doe" Hartsock, and Steven Ostrander and "Jane Doe" Ostrander, and Terry Franklin and "Jane Doe" Franklin, Lieutenant Julie Johnson and "John Doe" Johnson, are each respectively husband and wife, upon information and belief, residing at all times material hereto in Pierce, Thurston, and King Counties, in the State of Washington.

## II. JURISDICTION

**2.1**    This Court has jurisdiction over the subject matter hereof and parties hereto. Venue is proper in the United States District Court, Western District of Washington, at Seattle, pursuant to 28 U.S.C. § 1391 and the above-named Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. FACTS OF INCIDENTS GIVING RISE TO COMPLAINT FOR DAMAGES

**3.1**    On November 3, 2007, Defendants, Washington State Patrol Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Ryan Durbin and Steven Jones along with Washington State Patrol Sergeant Tom Martin stopped Plaintiff's car while Plaintiff was driving to Firearms Academy of Seattle. The actions of all Defendant

officers in detaining, interrogating and arresting the Plaintiff without legal cause deprived him of his Fourth Amendment rights to be free from deprivations of liberty without due process [Reference Paragraph 4A] and violation of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2)]. Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights and in violations under RCW § 9A.46.020 and RCW § 9A.46.010, constituting harassment, in which the Plaintiff was targeted on the date of November 3, 2007, by several Washington State Patrol Troopers of whom the Plaintiff had previously encountered [Reference Paragraph 4G (Subsection 4G.3)], and a violation of RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2)], and a violation of RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2)], and a violation of RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], and a violation of RCW § 9A.46.110, which defines stalking [Reference Paragraph 4T (Subsection 4T.2)], and a violation of RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2)], and a violation of the Fourth Amendment [Reference Paragraph 4BB (Subsection 4BB.9)], and a violation of the Fifth Amendment [Reference Paragraph 4CC (Subsection 4CC.2)], and a violation of the Fourteenth Amendment [Reference Paragraph 4FF (Subsection 4FF.2)].

**3.2**     The actions of Defendants, Washington State Patrol Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Ryan Durbin and Steven Jones along with Washington State Patrol Sergeant Tom Martin, were directly taken as a result of a third-party, hearsay, allegation of speeding, made via phone call, to which neither the third-party nor the Washington State Patrol could substantiate the allegation of speeding, nor was the Plaintiff cited for an infraction of speeding, nor was "speeding" witnessed by any Washington State Patrol Trooper involved in the incident, in direct violation of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2)], and Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights and in violations under RCW § 9A.46.020 and RCW § 9A.46.010, constituting harassment, in which the Plaintiff was targeted on the date of November 3, 2007, by several Washington State Patrol Troopers of whom the

Plaintiff had previously encountered [Reference Paragraph 4G (Subsection 4G.3)], and a violation of RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2)], and a violation of RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2)], and a violation of RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], and a violation of RCW § 9A.46.110, which defines stalking [Reference Paragraph 4T (Subsection 4T.2)], and a violation of RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2)], and a violation of the Fourth Amendment [Reference Paragraph 4BB (Subsection 4BB.9)], and a violation of the Fifth Amendment [Reference Paragraph 4CC (Subsection 4CC.2)], and a violation of the Fourteenth Amendment [Reference Paragraph 4FF (Subsection 4FF.2)].

**3.3**     On the date of November 3, 2007, the alleged witness Randy Flores placed a call to 911 regarding a white Ford Crown Victoria. Alleged witness Randy Flores claims that he placed the call to 911 at 9:30AM. This fact is substantiated by Trooper Christopher Noll, who claims that the call was received at 9:30AM.

**3.4**     Alleged witness Randy Flores indicates that a white Ford Crown Victoria approached him from behind on Southbound Interstate-5 and "flashed headlights" at him. Alleged witness Randy Flores indicates that the vehicle then passed him at a "high rate of speed". Alleged witness Randy Flores then provides a description which did not match the clothing the Plaintiff was wearing on the date and time of the alleged incident. Nor did it match the description which was later reported by Defendant Trooper Noll in his Narrative or "Sworn Affidavit". The statement of alleged witness Randy Flores is further inconsistent in that he alleges that the driver of the white Ford Crown Victoria was wearing a "brown jacket", yet he indicates that he saw tattoos on the driver's left arm, making the sworn affidavit of the alleged witness not only contradictory but highly questionable.

**3.5**     The Plaintiff never flashed headlights while traveling on Southbound Interstate-5. Additionally, no Washington State Trooper or other law enforcement officer witnessed such action, nor was the Plaintiff cited for any such violation, and therefore there is a presumption of no wrongdoing specifically in the fact that no action or crime or violation of law occurred.

**3.6**     Alleged witness Randy Flores' indication of the Plaintiff passing him at "a high rate of speed" can neither be supported by documentation, evidence, or witness statements, other than the single "biased" statement of Randy Flores, who has provided an inconsistent and highly questionable, third party, hearsay statement, which holds no factual basis in its occurrence. Randy Flores cannot even provide an accurate description of the vehicle's driver, nor of his appearance, or clothing, or rather, the "accurate" description provided by Randy Flores is a clear indication that the Plaintiff was not the individual Randy Flores placed the 911 call regarding.

**3.7**     Randy Flores did not possess the training or expertise to determine or assess or support his allegation of "high rate of speed" or support such allegations with speed measurement or experience in pacing or visual estimation. The allegation of a "high rate of speed" is merely an indication that the Plaintiff was traveling the speed limit in the left hand lane, while the alleged witness Randy Flores was traveling below the speed limit.

**3.8**     At the time that Randy Flores placed his call to 911, according to time, speed, and distance calculations, the vehicle the Plaintiff was operating, also a white Ford Crown Victoria, was 4.7 miles south of the location at which Randy Flores indicates that he encountered a vehicle of a similar description which he alleges "flashed headlights" at him and then passed him at a "high rate of speed" to which there is no supporting evidence, nor were such actions witnessed by any Washington State Trooper, or any other law enforcement officer in order to substantiate such an allegation as required by law, as defined by RCW § 10.31.100, which ***defines arrest without warrant, indicating that 'a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer,***" actions subsequently taken by the Defendant officers in direct violation of RCW § 10.31.100, which defines arrest without warrant [Reference Paragraph 4K (Subsection)] and additionally [Reference Paragraphs 4A and 4B], to which the Defendant officers additionally acted in violation of RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2)], and a violation of RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2)], defines official misconduct [Reference Paragraph 4Y

(Subsection 4Y.2)], and a violation of the Fourth Amendment [Reference Paragraph 4BB
(Subsection 4BB.9)], and a violation of the Fifth Amendment [Reference Paragraph 4CC
(Subsection 4CC.2)], and a violation of the Fourteenth Amendment [Reference
Paragraph 4FF (Subsection 4FF.2)].

**3.9**    The WSP CAD LOG, indicates that a call was received at 9:26:22, and
referencing the first location 24 seconds later, in which Randy Flores claims that the
vehicle in question was passing Mile Post 114, from the location at which the call was
placed at Mile Post 116, the vehicle passing Randy Flores would have had to have been
traveling at a rate of speed of 273 miles per hour, to cover the 9600 feet of distance
between Mile Post 116 and Mile Post 114. Randy Flores would have been unable to
provide an accurate description of the driver or provide an accurate license plate number
at such speeds. The white Ford Crown Victoria operated by the Plaintiff, which was
traveling 4.7 miles south of Randy Flores' location at the time of the call, was not
mechanically capable of reaching a speed of 273 miles per hour, and was not the vehicle
which passed Randy Flores at Mile Post 116 which he alleges flashed its headlights at
him. If we base the assumption of this, as the entire incident, and the subsequent fact that
the investigation by the Washington State Patrol was based solely upon assumption and
presumption, it is only then obvious to assume that when Randy Flores accelerated his
own vehicle to a speed of 140 miles per hour in order to locate the vehicle which had
passed him, Randy Flores then located the Plaintiff's vehicle which appeared similar in
make and model to the vehicle which had in fact passed Randy Flores, to which Randy
Flores then provided the license plate number to the Washington State Patrol
intentionally, and in error. Regardless of this, the allegation remained hearsay, and was
not substantiated by the Washington State Patrol, or corroborated by any other witness or
witness statement, to which there exists a direct violation under RCW § 10.31.100, which
***"defines arrest without warrant, indicating that 'a police officer may arrest a person***
***without a warrant for committing a misdemeanor or gross misdemeanor only when the***
***offense is committed in the presence of the officer,"*** [Reference Paragraph 4K
(Subsection) and Section III (Paragraph 3.8)].

**3.10**    Based upon the statement of Randy Flores, and the description, and time and
location, the vehicle which Randy Flores alleges passed him on Southbound Interstate-5

at 9:30AM, was not the vehicle driven by the Plaintiff. Additionally, due to violations of

RCW § 9A.72.150, which defines tampering with physical evidence [Reference

Paragraph 4X (Subsection 4X.2)], to which the Washington State Patrol knowingly

destroyed the 911 tape which prompted the traffic stop on the date of November 3, 2007,

on the date of February 12, 2008 [date of destruction of evidence], which was "evidence"

to an "official proceeding," there is no longer a way in which to verify the license plate

number alleged in the 911 call by the alleged witness Randy Flores, thereby which we

must now rely on the perjured statements provided by the Defendant officers, who

knowingly and willingly with malicious intent, provided perjured affidavits and

narratives in violations of RCW § 9A.72.020, which defines perjury in the first degree

[Reference Paragraph 4V (Subsection 4V.2)] and a violation of RCW § 9A.72.050, which

defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2)].

**3.11**    At no time did any Washington State Patrol Trooper witness any civil infractions

or any criminal actions being committed by the Plaintiff. No Washington State Patrol

Trooper witnessed the allegations made by Randy Flores, nor did any Washington State

Patrol Trooper take a speed measurement to substantiate the claim of speeding or witness

the actions of a person attempting to commit criminal impersonation, to which none of

the necessary elements required for a violation of RCW 9A.60.045, defining criminal

impersonation in the second degree, were ever witnessed by either the alleged witness

Randy Flores, or any of the Defendant officers making all subsequent actions by the

Defendant officers illegal, and in direct violation of RCW § 10.31.100, which defines

arrest without warrant [Reference Paragraph 4K (Subsection) and Section III

(Paragraph 3.8)], as well as violations of all subsequent cause of actions as noted

below [Reference Section IV Liability and Damages (Cause of Action Paragraphs 4A

through 4HH)]. The statement provided by Randy Flores was falsely reported, and the

Washington State Patrol took actions against the Plaintiff based solely upon hearsay in

direct violation of the Plaintiffs civil and constitutional rights in violation of Title 42

U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2)], the First Amendment

[Reference Paragraph 4Z (Subsection 4Z.2)], the Second Amendment [Reference

Paragraph 4AA (Subsection 4AA.2)], the Fourth Amendment [Reference Paragraph 4BB

(Subsection 4BB.2 through 4BB.12)], the Fifth Amendment [Reference Paragraph 4CC

(Subsection 4CC.2 through 4CC.6)], the Sixth Amendment [Reference Paragraph 4DD (Subsection 4DD.2 through 4DD.5)], the Eighth Amendment [Reference Paragraph 4EE (Subsection 4EE.2 through 4EE.4)], the Fourteenth Amendment [Reference Paragraph 4FF (Subsection 4FF.2 through 4FF.5)], the Civil Rights Act of 1964 [Reference Paragraph 4GG (Subsection 4GG.2 through 4GG.4)].

**3.12**    Randy Flores made no allegation of flashing a spotlight. The allegation of flashing a spotlight was created after the fact by the Washington State Patrol and Defendant, Detective Juli Gunderman in direct violation of RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V (Subsection 4V.2)] and a violation of RCW § 9A.72.050, which defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2)] and violations of both RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F (Subsection 4F.2 through 4F.3)] and a violation of RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2)]. The fact was that the spotlight on the vehicle was pointed down and away while the Plaintiff's vehicle was being operated, and it was non-functional at the time of the traffic stop, with wires exposed and use of the spotlight itself was never witnessed by any Washington State Trooper or any of the Defendant officers who made the allegation of spotlight usage in their sworn affidavits and narratives, in violation of RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V (Subsection 4V.2)] and a violation of RCW § 9A.72.050, which defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2)] and violations of both RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F (Subsection 4F.2 through 4F.3)] and a violation of RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2)].

**3.13**    The Plaintiff provided documentation and explanation, as well as evidence at the time of the traffic stop against the hearsay allegations of Randy Flores, yet the Washington State Patrol and Defendants, Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Ryan Durbin and Steven Jones along with Washington State Patrol Sergeant Tom Martin ignored these documents, statements and facts which obviously exonerated the Plaintiff and provided a factual basis for no crime

having occurred, and refused to corroborate any of the information provided. The actions of all Defendant officers in detaining, interrogating and arresting the Plaintiff without legal cause deprived him of his Fourth Amendment rights to be free from deprivations of liberty without due process. Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights in violations of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2 through 4C.3)], and RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F (Subsection 4F.2 through 4F.3)], and RCW § 9A.46.020 and RCW § 9A.46.010 which defines harassment [Reference Paragraph 4G (Subsection 4G.2 through 4G.3)], and RCW § 9.62.010, which defines malicious prosecution [Reference Paragraph 4H (Subsection 4H.2)], and RCW § 10.79.040, which defines search without warrant unlawful [Reference Paragraph 4I (Subsection 4I.2 through 4I.3)], and RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2 through 4J.3)], and RCW § 10.31.100, which *defines arrest without warrant, indicating that 'a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer"* [Reference Paragraph 4K (Subsection 4K.2 through 4K.3)], and RCW § 9A.48.070, which defines malicious mischief in the first degree [Reference Paragraph 4L (Subsection 4L.2)], and RCW § 9A.36.011, which defines assault in the first degree [Reference Paragraph 4M (Subsection 4M.2 through 4M.3)], and RCW § 9A.36.021, which defines assault in the second degree [Reference Paragraph 4N (Subsection 4N.2 through 4N.3)], and RCW § 9A.36.050, which defines reckless endangerment [Reference Paragraph 4O (Subsection 4O.2)], and RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2 through 4P.3)], and RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], and RCW § 9A.40.020, which defines kidnapping in the first degree [Reference Paragraph 4R (Subsection 4R.2 through 4R.3)], and RCW § 9A.40.040, which defines unlawful imprisonment [Reference Paragraph 4S (Subsection 4S.2 through 4S.3)], and RCW § 9A.46.110, which defines stalking [Reference Paragraph 4T (Subsection 4T.2 through 4T.3)], and RCW § 9A.56.200 which defines robbery in the

first degree [Reference Paragraph 4U (Subsection 4U.2 through 4U.3)], and
RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V
(Subsection 4V.2 through 4V.3)], and RCW § 9A.72.050, which defines perjury and
false swearing [Reference Paragraph 4W (Subsection 4W.2 through 4W.3)], and
RCW § 9A.72.150, which defines tampering with physical evidence [Reference
Paragraph 4X (Subsection 4X.2 through 4X.3)], and RCW § 9A.80.010, which defines
official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)], and the
First Amendment, *in that the Supreme Court held that the Due Process Clause of the*
*Fourteenth Amendment applies the First Amendment to each state, including any*
*local government* [Reference Paragraph 4Z (Subsection 4Z.2 through 4Z.4)], and the
Second Amendment as it *is applicable to the States and political subdivisions thereof*
*through the Fourteenth Amendment* [Reference Paragraph 4AA (Subsection 4AA.2
through 4AA.5)], and the Fourth Amendment as it *applies to the states by way of the*
*Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4BB
(Subsection 4BB.2 through 4BB.12)], and the Fifth Amendment in that *"the fifth*
*amendment prevents individuals from being deprived of life, liberty, or property*
*without "due process of law." Due process extends to all persons and corporate*
*entities. The Fourteenth Amendment explicitly binds the states with due process*
*protections, through selective incorporation* [Reference Paragraph 4CC (Subsection
4CC.2 through 4CC.6)], and the Sixth Amendment in that *the Supreme Court has*
*applied the protections of this amendment to the states through the Due Process*
*Clause of the Fourteenth Amendment* [Reference Paragraph 4DD (Subsection 4DD.2
through 4DD.5)], and the Eighth Amendment in that *in Louisiana ex rel. Francis v.*
*Resweber 329 U.S. 459 (1947), the Supreme Court assumed that the Cruel and*
*Unusual Punishments Clause applied to the states. In Robinson v. California, 370*
*U.S. 660 (1962), the Court ruled that clause did apply to the states through the Due*
*Process Clause of the Fourteenth Amendment* [Reference Paragraph 4EE (Subsection
4EE.2 through 4EE.4)], and the Fourteenth Amendment in that *its Due Process Clause*
*has been used to apply most of the Bill of Rights to the states. This clause has also*
*been used to recognize: (1) substantive due process rights, such as parental and*
*marriage rights; and (2) procedural due process rights requiring that certain steps,*

*such as a hearing, be followed before a person's "life, liberty, or property" can be taken away. The amendment's Equal Protection Clause requires states to provide equal protection under the law to all people within their jurisdictions* [Reference Paragraph 4FF (Subsection 4FF.2 through 4FF.5)], and the Civil Rights Act of 1964, *which outlines under Title VI, "[the prevention of] discrimination by government agencies that receive federal funding* [Reference Paragraph 4GG (Subsection 4GG.2 through 4GG.4)]. Defendants, Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Ryan Durbin and Steven Jones along with Washington State Patrol Sergeant Tom Martin, arrested the Plaintiff for criminal impersonation in the second degree in direct violation of the laws described herein [Reference Paragraphs 4A through 4HH (including all subsections)].

**3.14**    Because of the drastic misstatements and untruths written in Defendants, Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Ryan Durbin and Steven Jones along with Washington State Patrol Sergeant Tom Martin's arrest report, their sworn affidavits and narratives, the Plaintiff, Mr. Friedmann was arrested, booked, and had his firearms illegally seized and held without cause for a total of nine months. Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights in violations of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2 through 4C.3)], and RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F (Subsection 4F.2 through 4F.3)], and RCW § 9A.46.020 and RCW § 9A.46.010 which define harassment [Reference Paragraph 4G (Subsection 4G.2 through 4G.3)], and RCW § 9.62.010, which defines malicious prosecution [Reference Paragraph 4H (Subsection 4H.2)], and RCW § 10.79.040, which defines search without warrant unlawful [Reference Paragraph 4I (Subsection 4I.2 through 4I.3)], and RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2 through 4J.3)], and RCW § 10.31.100, which *defines arrest without warrant, indicating that 'a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer"* [Reference Paragraph 4K (Subsection 4K.2 through 4K.3)], and RCW § 9A.48.070,

which defines malicious mischief in the first degree [Reference Paragraph 4L
(Subsection 4L.2)], and RCW § 9A.36.011, which defines assault in the first degree
[Reference Paragraph 4M (Subsection 4M.2 through 4M.3)], and RCW § 9A.36.021,
which defines assault in the second degree [Reference Paragraph 4N (Subsection 4N.2
through 4N.3)], and RCW § 9A.36.050, which defines reckless endangerment
[Reference Paragraph 4O (Subsection 4O.2)], and RCW § 9A.36.070, which defines
coercion [Reference Paragraph 4P (Subsection 4P.2 through 4P.3)], and
RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q
(Subsection 4Q.2)], and RCW § 9A.40.020, which defines kidnapping in the first degree
[Reference Paragraph 4R (Subsection 4R.2 through 4R.3)], and RCW § 9A.40.040,
which defines unlawful imprisonment [Reference Paragraph 4S (Subsection 4S.2
through 4S.3)], and RCW § 9A.46.110, which defines stalking [Reference Paragraph 4T
(Subsection 4T.2 through 4T.3)], and RCW § 9A.56.200 which defines robbery in the
first degree [Reference Paragraph 4U (Subsection 4U.2 through 4U.3)], and
RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V
(Subsection 4V.2 through 4V.3)], and RCW § 9A.72.050, which defines perjury and
false swearing [Reference Paragraph 4W (Subsection 4W.2 through 4W.3)], and
RCW § 9A.72.150, which defines tampering with physical evidence [Reference
Paragraph 4X (Subsection 4X.2 through 4X.3)], and RCW § 9A.80.010, which defines
official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)], and the
First Amendment, *in that the Supreme Court held that the Due Process Clause of the
Fourteenth Amendment applies the First Amendment to each state, including any
local government* [Reference Paragraph 4Z (Subsection 4Z.2 through 4Z.4)], and the
Second Amendment as it *is applicable to the States and political subdivisions thereof
through the Fourteenth Amendment* [Reference Paragraph 4AA (Subsection 4AA.2
through 4AA.5)], and the Fourth Amendment as it *applies to the states by way of the
Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4BB
(Subsection 4BB.2 through 4BB.12)], and the Fifth Amendment in that *"the fifth
amendment prevents individuals from being deprived of life, liberty, or property
without "due process of law." Due process extends to all persons and corporate
entities. The Fourteenth Amendment explicitly binds the states with due process*

*protections, through selective incorporation* [Reference Paragraph 4CC (Subsection 4CC.2 through 4CC.6)], and the Sixth Amendment in that *the Supreme Court has applied the protections of this amendment to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4DD (Subsection 4DD.2 through 4DD.5)], and the Eighth Amendment in that *in Louisiana ex rel. Francis v. Resweber 329 U.S. 459 (1947), the Supreme Court assumed that the Cruel and Unusual Punishments Clause applied to the states. In Robinson v. California, 370 U.S. 660 (1962), the Court ruled that clause did apply to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4EE (Subsection 4EE.2 through 4EE.4)], and the Fourteenth Amendment in that *its Due Process Clause has been used to apply most of the Bill of Rights to the states. This clause has also been used to recognize: (1) substantive due process rights, such as parental and marriage rights; and (2) procedural due process rights requiring that certain steps, such as a hearing, be followed before a person's "life, liberty, or property" can be taken away. The amendment's Equal Protection Clause requires states to provide equal protection under the law to all people within their jurisdictions* [Reference Paragraph 4FF (Subsection 4FF.2 through 4FF.5)], and the Civil Rights Act of 1964, *which outlines under Title VI, "[the prevention of] discrimination by government agencies that receive federal funding* [Reference Paragraph 4GG (Subsection 4GG.2 through 4GG.4)].

**3.15**    Defendant, Detective Juli Mitchell, now Detective Juli Gunderman, indicates in her Investigation Log Report, that she contacted the alleged witness in 2003, which was four years before the incident alleged to have occurred on the date of November 3, 2007.

**3.16**    Defendant, Detective Juli Mitchell indicates in her Investigation Log Report that she contacted Randy Flores at 7:15AM, the call to 911 was not placed until, as alleged by both Randy Flores and Defendant, Trooper Christopher Noll, 9:30AM.

**3.17**    The Plaintiff was targeted on the date of November 3, 2007, by several Washington State Patrol Troopers of whom the Plaintiff had previously encountered. The Plaintiff, through the not for profit corporation known as the Washington State Police Investigations Commission, had since the year 2000, filed complaints of harassment and misconduct against Washington State Patrol Troopers Nicholas Casto, Robert Howson,

John Hazuka, "John Doe" Clevenger, as well as Sergeant Olsen and Sergeant Ramirez. Coincidently, these were the same individuals who initiated the traffic stop on the date of November 3, 2007. Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights in violations of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2 through 4C.3)], and RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F (Subsection 4F.2 through 4F.3)], and RCW § 9A.46.020 and RCW § 9A.46.010 which defines harassment [Reference Paragraph 4G (Subsection 4G.2 through 4G.3)], and RCW § 9.62.010, which defines malicious prosecution [Reference Paragraph 4H (Subsection 4H.2)], and RCW § 10.79.040, which defines search without warrant unlawful [Reference Paragraph 4I (Subsection 4I.2 through 4I.3)], and RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2 through 4J.3)], and RCW § 10.31.100, which *defines arrest without warrant, indicating that 'a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer*" [Reference Paragraph 4K (Subsection 4K.2 through 4K.3)], and RCW § 9A.48.070, which defines malicious mischief in the first degree [Reference Paragraph 4L (Subsection 4L.2)], and RCW § 9A.36.011, which defines assault in the first degree [Reference Paragraph 4M (Subsection 4M.2 through 4M.3)], and RCW § 9A.36.021, which defines assault in the second degree [Reference Paragraph 4N (Subsection 4N.2 through 4N.3)], and RCW § 9A.36.050, which defines reckless endangerment [Reference Paragraph 4O (Subsection 4O.2)], and RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2 through 4P.3)], and RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], and RCW § 9A.40.020, which defines kidnapping in the first degree [Reference Paragraph 4R (Subsection 4R.2 through 4R.3)], and RCW § 9A.40.040, which defines unlawful imprisonment [Reference Paragraph 4S (Subsection 4S.2 through 4S.3)], and RCW § 9A.46.110, which defines stalking [Reference Paragraph 4T (Subsection 4T.2 through 4T.3)], and RCW § 9A.56.200 which defines robbery in the first degree [Reference Paragraph 4U (Subsection 4U.2 through 4U.3)], and

RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V (Subsection 4V.2 through 4V.3)], and RCW § 9A.72.050, which defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2 through 4W.3)], and RCW § 9A.72.150, which defines tampering with physical evidence [Reference Paragraph 4X (Subsection 4X.2 through 4X.3)], and RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)], and the First Amendment, *in that the Supreme Court held that the Due Process Clause of the Fourteenth Amendment applies the First Amendment to each state, including any local government* [Reference Paragraph 4Z (Subsection 4Z.2 through 4Z.4)], and the Second Amendment as it *is applicable to the States and political subdivisions thereof through the Fourteenth Amendment* [Reference Paragraph 4AA (Subsection 4AA.2 through 4AA.5)], and the Fourth Amendment as it *applies to the states by way of the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4BB (Subsection 4BB.2 through 4BB.12)], and the Fifth Amendment in that *"the fifth amendment prevents individuals from being deprived of life, liberty, or property without "due process of law." Due process extends to all persons and corporate entities. The Fourteenth Amendment explicitly binds the states with due process protections, through selective incorporation* [Reference Paragraph 4CC (Subsection 4CC.2 through 4CC.6)], and the Sixth Amendment in that *the Supreme Court has applied the protections of this amendment to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4DD (Subsection 4DD.2 through 4DD.5)], and the Eighth Amendment in that *in Louisiana ex rel. Francis v. Resweber 329 U.S. 459 (1947), the Supreme Court assumed that the Cruel and Unusual Punishments Clause applied to the states. In Robinson v. California, 370 U.S. 660 (1962), the Court ruled that clause did apply to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4EE (Subsection 4EE.2 through 4EE.4)], and the Fourteenth Amendment in that *its Due Process Clause has been used to apply most of the Bill of Rights to the states. This clause has also been used to recognize: (1) substantive due process rights, such as parental and marriage rights; and (2) procedural due process rights requiring that certain steps, such as a hearing, be followed before a person's "life, liberty, or property" can be*

*taken away. The amendment's Equal Protection Clause requires states to provide equal protection under the law to all people within their jurisdictions* [Reference Paragraph 4FF (Subsection 4FF.2 through 4FF.5)], and the Civil Rights Act of 1964, *which outlines under Title VI, "[the prevention of] discrimination by government agencies that receive federal funding* [Reference Paragraph 4GG (Subsection 4GG.2 through 4GG.4)]. As a matter of additional record, Defendants, Sergeant Olsen and Sergeant Ramirez failed to provide narrative of documentation to show that they were involved in the incident and present at the scene following the initial arrest in violations of RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2 through 4P.3)], and RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], and RCW § 9A.46.110, which defines stalking [Reference Paragraph 4T (Subsection 4T.2 through 4T.3)], which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)]. Additionally, Defendant, Trooper Christopher Noll's dash camera footage was tampered with following the traffic stop in violation of RCW § 9A.72.150, which defines tampering with physical evidence [Reference Paragraph 4X (Subsection 4X.2 through 4X.3)].

**3.18**    Defendant, Detective Juli Mitchell, now Juli Gunderman, indicated in a conversation with Colonel Robert U. Schultz, Jr., on the date of November 3, 2007, that nothing the Plaintiff had done was illegal, and that everything was circumstantial but that she [Detective Juli Gunderman] was going to go ahead and arrest the Plaintiff anyways in direct violations of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2 through 4C.3)], and RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F (Subsection 4F.2 through 4F.3)], and RCW § 9A.46.020 and RCW § 9A.46.010 which defines harassment [Reference Paragraph 4G (Subsection 4G.2 through 4G.3)], and RCW § 9.62.010, which defines malicious prosecution [Reference Paragraph 4H (Subsection 4H.2)], and RCW § 10.79.040, which defines search without warrant unlawful [Reference Paragraph 4I (Subsection 4I.2 through 4I.3)], and RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2 through 4J.3)], and RCW § 10.31.100, which *"defines arrest without warrant, indicating that 'a police*

*officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer"* [Reference Paragraph 4K (Subsection 4K.2 through 4K.3)], and RCW § 9A.48.070, which defines malicious mischief in the first degree [Reference Paragraph 4L (Subsection 4L.2)], and RCW § 9A.36.011, which defines assault in the first degree [Reference Paragraph 4M (Subsection 4M.2 through 4M.3)], and RCW § 9A.36.021, which defines assault in the second degree [Reference Paragraph 4N (Subsection 4N.2 through 4N.3)], and RCW § 9A.36.050, which defines reckless endangerment [Reference Paragraph 4O (Subsection 4O.2)], and RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2 through 4P.3)], and RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], and RCW § 9A.40.020, which defines kidnapping in the first degree [Reference Paragraph 4R (Subsection 4R.2 through 4R.3)], and RCW § 9A.40.040, which defines unlawful imprisonment [Reference Paragraph 4S (Subsection 4S.2 through 4S.3)], and RCW § 9A.46.110, which defines stalking [Reference Paragraph **4T** (Subsection 4T.2 through 4T.3)], and RCW § 9A.56.200 which defines robbery in the first degree [Reference Paragraph 4U (Subsection 4U.2 through 4U.3)], and RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V (Subsection 4V.2 through 4V.3)], and RCW § 9A.72.050, which defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2 through 4W.3)], and RCW § 9A.72.150, which defines tampering with physical evidence [Reference Paragraph 4X (Subsection 4X.2 through 4X.3)], and RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)], and the First Amendment, *in that the Supreme Court held that the Due Process Clause of the Fourteenth Amendment applies the First Amendment to each state, including any local government* [Reference Paragraph 4Z (Subsection 4Z.2 through 4Z.4)], and the Second Amendment as it *is applicable to the States and political subdivisions thereof through the Fourteenth Amendment* [Reference Paragraph 4AA (Subsection 4AA.2 through 4AA.5)], and the Fourth Amendment as it *applies to the states by way of the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4BB (Subsection 4BB.2 through 4BB.12)], and the Fifth Amendment in that *"the fifth*

*amendment prevents individuals from being deprived of life, liberty, or property without "due process of law." Due process extends to all persons and corporate entities. The Fourteenth Amendment explicitly binds the states with due process protections, through selective incorporation* [Reference Paragraph 4CC (Subsection 4CC.2 through 4CC.6)], and the Sixth Amendment in that *the Supreme Court has applied the protections of this amendment to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4DD (Subsection 4DD.2 through 4DD.5)], and the Eighth Amendment in that *in Louisiana ex rel. Francis v. Resweber 329 U.S. 459 (1947), the Supreme Court assumed that the Cruel and Unusual Punishments Clause applied to the states. In Robinson v. California, 370 U.S. 660 (1962), the Court ruled that clause did apply to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4EE (Subsection 4EE.2 through 4EE.4)], and the Fourteenth Amendment in that *its Due Process Clause has been used to apply most of the Bill of Rights to the states. This clause has also been used to recognize: (1) substantive due process rights, such as parental and marriage rights; and (2) procedural due process rights requiring that certain steps, such as a hearing, be followed before a person's "life, liberty, or property" can be taken away. The amendment's Equal Protection Clause requires states to provide equal protection under the law to all people within their jurisdictions* [Reference Paragraph 4FF (Subsection 4FF.2 through 4FF.5)], and the Civil Rights Act of 1964, *which outlines under Title VI, "[the prevention of] discrimination by government agencies that receive federal funding* [Reference Paragraph 4GG (Subsection 4GG.2 through 4GG.4)].

**3.19**    The Plaintiffs vehicle was illegally searched without consent and the Plaintiff's property was illegally seized without reason or probable cause by Defendants, Washington State Patrol Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Ryan Durbin and Steven Jones along with Washington State Patrol Sergeant Tom Martin, who did not prior to the search and seizure, receive a consent to Search in direct violations of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2 through 4C.3)], and RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F

(Subsection 4F.2 through 4F.3)], and RCW § 9A.46.020 and RCW § 9A.46.010 which defines harassment [Reference Paragraph 4G (Subsection 4G.2 through 4G.3)], and RCW § 9.62.010, which defines malicious prosecution [Reference Paragraph 4H (Subsection 4H.2)], and RCW § 10.79.040, which defines search without warrant unlawful [Reference Paragraph 4I (Subsection 4I.2 through 4I.3)], and RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2 through 4J.3)], and RCW § 10.31.100, which *defines arrest without warrant, indicating that 'a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer*" [Reference Paragraph 4K (Subsection 4K.2 through 4K.3)], and RCW § 9A.48.070, which defines malicious mischief in the first degree [Reference Paragraph 4L (Subsection 4L.2)], and RCW § 9A.36.011, which defines assault in the first degree [Reference Paragraph 4M (Subsection 4M.2 through 4M.3)], and RCW § 9A.36.021, which defines assault in the second degree [Reference Paragraph 4N (Subsection 4N.2 through 4N.3)], and RCW § 9A.36.050, which defines reckless endangerment [Reference Paragraph 4O (Subsection 4O.2)], and RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2 through 4P.3)], and RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], and RCW § 9A.40.020, which defines kidnapping in the first degree [Reference Paragraph 4R (Subsection 4R.2 through 4R.3)], and RCW § 9A.40.040, which defines unlawful imprisonment [Reference Paragraph 4S (Subsection 4S.2 through 4S.3)], and RCW § 9A.46.110, which defines stalking [Reference Paragraph 4T (Subsection 4T.2 through 4T.3)], and RCW § 9A.56.200 which defines robbery in the first degree [Reference Paragraph 4U (Subsection 4U.2 through 4U.3)], and RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V (Subsection 4V.2 through 4V.3)], and RCW § 9A.72.050, which defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2 through 4W.3)], and RCW § 9A.72.150, which defines tampering with physical evidence [Reference Paragraph 4X (Subsection 4X.2 through 4X.3)], and RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)], and the

First Amendment, *in that the Supreme Court held that the Due Process Clause of the Fourteenth Amendment applies the First Amendment to each state, including any local government* [Reference Paragraph 4Z (Subsection 4Z.2 through 4Z.4)], and the Second Amendment as it *is applicable to the States and political subdivisions thereof through the Fourteenth Amendment* [Reference Paragraph 4AA (Subsection 4AA.2 through 4AA.5)], and the Fourth Amendment as it *applies to the states by way of the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4BB (Subsection 4BB.2 through 4BB.12)], and the Fifth Amendment in that *"the fifth amendment prevents individuals from being deprived of life, liberty, or property without "due process of law." Due process extends to all persons and corporate entities. The Fourteenth Amendment explicitly binds the states with due process protections, through selective incorporation* [Reference Paragraph 4CC (Subsection 4CC.2 through 4CC.6)], and the Sixth Amendment in that *the Supreme Court has applied the protections of this amendment to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4DD (Subsection 4DD.2 through 4DD.5)], and the Eighth Amendment in that *in Louisiana ex rel. Francis v. Resweber 329 U.S. 459 (1947), the Supreme Court assumed that the Cruel and Unusual Punishments Clause applied to the states. In Robinson v. California, 370 U.S. 660 (1962), the Court ruled that clause did apply to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4EE (Subsection 4EE.2 through 4EE.4)], and the Fourteenth Amendment in that *its Due Process Clause has been used to apply most of the Bill of Rights to the states. This clause has also been used to recognize: (1) substantive due process rights, such as parental and marriage rights; and (2) procedural due process rights requiring that certain steps, such as a hearing, be followed before a person's "life, liberty, or property" can be taken away. The amendment's Equal Protection Clause requires states to provide equal protection under the law to all people within their jurisdictions* [Reference Paragraph 4FF (Subsection 4FF.2 through 4FF.5)], and the Civil Rights Act of 1964, *which outlines under Title VI, "[the prevention of] discrimination by government agencies that receive federal funding* [Reference Paragraph 4GG (Subsection 4GG.2 through 4GG.4)]. Following the illegal search and seizure, Defendants, Troopers Robert

Howson and Nicholas Casto requested that the Plaintiff sign a consent to search, which the Plaintiff refused. Trooper Nicholas Casto then indicated that the Plaintiff's signature was not required, and that the Plaintiff was "going to jail either way" and then Trooper Nicholas Casto proceeded to sign the consent to search himself in direct violations of RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V (Subsection 4V.2 through 4V.3)], and RCW § 9A.72.050, which defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2 through 4W.3)], and RCW § 9A.72.150, which defines tampering with physical evidence [Reference Paragraph 4X (Subsection 4X.2 through 4X.3)], and RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)].

**3.20**    Following the traffic stop on the date of November 3, 2007, the Plaintiff invoked his right to an attorney and his right to remain silent on three separate occasions, yet was denied his right to invoke, regardless of the fact that he had not been Mirandized, and that the Washington State Patrol was claiming that he was only being detained, although he had been handcuffed from the moment the traffic stop occurred for a total of seven hours, and had been told by the Washington State Patrol Troopers at the traffic stop that they "were only trying to figure out what was going on" and that the Plaintiff did not "need a lawyer if he had done nothing wrong". Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights in violations of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2 through 4C.3)], and RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F (Subsection 4F.2 through 4F.3)], and RCW § 9A.46.020 and RCW § 9A.46.010 which defines harassment [Reference Paragraph 4G (Subsection 4G.2 through 4G.3)], and RCW § 9.62.010, which defines malicious prosecution [Reference Paragraph 4H (Subsection 4H.2)], and RCW § 10.79.040, which defines search without warrant unlawful [Reference Paragraph 4I (Subsection 4I.2 through 4I.3)], and RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2 through 4J.3)], and RCW § 10.31.100, which *__defines arrest without warrant, indicating that 'a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer"__*

[Reference Paragraph 4K (Subsection 4K.2 through 4K.3)], and RCW § 9A.48.070, which defines malicious mischief in the first degree [Reference Paragraph 4L (Subsection 4L.2)], and RCW § 9A.36.011, which defines assault in the first degree [Reference Paragraph 4M (Subsection 4M.2 through 4M.3)], and RCW § 9A.36.021, which defines assault in the second degree [Reference Paragraph 4N (Subsection 4N.2 through 4N.3)], and RCW § 9A.36.050, which defines reckless endangerment [Reference Paragraph 4O (Subsection 4O.2)], and RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2 through 4P.3)], and RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], and RCW § 9A.40.020, which defines kidnapping in the first degree [Reference Paragraph 4R (Subsection 4R.2 through 4R.3)], and RCW § 9A.40.040, which defines unlawful imprisonment [Reference Paragraph 4S (Subsection 4S.2 through 4S.3)], and RCW § 9A.46.110, which defines stalking [Reference Paragraph 4T (Subsection 4T.2 through 4T.3)], and RCW § 9A.56.200 which defines robbery in the first degree [Reference Paragraph 4U (Subsection 4U.2 through 4U.3)], and RCW § 9A.72.020, which defines perjury in the first degree [Reference Paragraph 4V (Subsection 4V.2 through 4V.3)], and RCW § 9A.72.050, which defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2 through 4W.3)], and RCW § 9A.72.150, which defines tampering with physical evidence [Reference Paragraph 4X (Subsection 4X.2 through 4X.3)], and RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)], and the First Amendment, *in that the Supreme Court held that the Due Process Clause of the Fourteenth Amendment applies the First Amendment to each state, including any local government* [Reference Paragraph 4Z (Subsection 4Z.2 through 4Z.4)], and the Second Amendment as it *is applicable to the States and political subdivisions thereof through the Fourteenth Amendment* [Reference Paragraph 4AA (Subsection 4AA.2 through 4AA.5)], and the Fourth Amendment as it *applies to the states by way of the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4BB (Subsection 4BB.2 through 4BB.12)], and the Fifth Amendment in that *"the fifth amendment prevents individuals from being deprived of life, liberty, or property without "due process of law." Due process extends to all persons and corporate*

*entities. **The Fourteenth Amendment explicitly binds the states with due process***
***protections, through selective incorporation*** [Reference Paragraph 4CC (Subsection
4CC.2 through 4CC.6)], and the Sixth Amendment in that ***the Supreme Court has***
***applied the protections of this amendment to the states through the Due Process***
***Clause of the Fourteenth Amendment*** [Reference Paragraph 4DD (Subsection 4DD.2
through 4DD.5)], and the Eighth Amendment in that ***in Louisiana ex rel. Francis v.***
***Resweber 329 U.S. 459 (1947), the Supreme Court assumed that the Cruel and***
***Unusual Punishments Clause applied to the states. In Robinson v. California, 370***
***U.S. 660 (1962), the Court ruled that clause did apply to the states through the Due***
***Process Clause of the Fourteenth Amendment*** [Reference Paragraph 4EE (Subsection
4EE.2 through 4EE.4)], and the Fourteenth Amendment in that ***its Due Process Clause***
***has been used to apply most of the Bill of Rights to the states. This clause has also***
***been used to recognize: (1) substantive due process rights, such as parental and***
***marriage rights; and (2) procedural due process rights requiring that certain steps,***
***such as a hearing, be followed before a person's "life, liberty, or property" can be***
***taken away. The amendment's Equal Protection Clause requires states to provide***
***equal protection under the law to all people within their jurisdictions*** [Reference
Paragraph 4FF (Subsection 4FF.2 through 4FF.5)], and the Civil Rights Act of 1964,
***which outlines under Title VI, "[the prevention of] discrimination by government***
***agencies that receive federal funding*** [Reference Paragraph 4GG (Subsection 4GG.2
through 4GG.4)]. As a matter of additional record, Defendants, Sergeant Olsen and
Sergeant Ramirez failed to provide narrative of documentation to show that they were
involved in the incident and present at the scene following the initial arrest in violations
of RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection
4P.2 through 4P.3)], and RCW § 9A.36.080, which defines malicious harassment
[Reference Paragraph 4Q (Subsection 4Q.2)], and RCW § 9A.46.110, which defines
stalking [Reference Paragraph 4T (Subsection 4T.2 through 4T.3)], which defines
official misconduct [Reference Paragraph 4Y (Subsection 4Y.2 through 4Y.8)].
Additionally, Defendant, Trooper Christopher Noll's dash camera footage was tampered
with following the traffic stop in violation of RCW § 9A.72.150, which defines
tampering with physical evidence [Reference Paragraph 4X (Subsection 4X.2 through

4X.3)].

**3.21**    The Plaintiff was traveling on Southbound Interstate-5 on the date of November 3, 2007, on his way to Onalaska to attend a course at the Firearms Academy of Seattle, Inc., a course to which the Plaintiff had received a written invitation, which was confirmed and corroborated by the Washington State Patrol with the documentation at the traffic stop produced by the Plaintiff, documentation of which the Washington State Patrol and the Defendant officers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Ryan Durbin and Steven Jones along with Washington State Patrol Sergeant Tom Martin disregarded without cause or reason. Additionally, the Plaintiff was in possession of a State of Washington Concealed Pistol License, and also possessed a State of New Hampshire Concealed Pistol License.

**3.22**    On the date of November 5, 2007, the Washington State Patrol released a highly biased and defamatory press release containing the Plaintiff's personal information. This press release was released to KOMO, KIRO, KING, and The Tacoma News Tribune. Interviews were also given by Trooper Kessler and Detective Gunderman, who continued to allege the unproven theories subsequently concocted, following the traffic stop on the date of November 3, 2007. This story was aired by all four news media outlets and printed in The Tacoma News Tribune, in violations of Title 42 U.S.C. § 1983 [Reference Paragraph 4C (Subsection 4C.2 through 4C.3)], and RCW § 9.58.080 and RCW § 9.58.010, which indicates and clearly defines libel and defamation [Reference Paragraph 4F (Subsection 4F.2 through 4F.3)], and RCW § 9A.46.020 and RCW § 9A.46.010 which defines harassment [Reference Paragraph 4G (Subsection 4G.2 through 4G.3)], and RCW § 9.62.010, which defines malicious prosecution [Reference Paragraph 4H (Subsection 4H.2)], and RCW § 9.91.010, which defines the denial of civil rights [Reference Paragraph 4J (Subsection 4J.2 through 4J.3)], and RCW § 9A.36.070, which defines coercion [Reference Paragraph 4P (Subsection 4P.2 through 4P.3)], and RCW § 9A.36.080, which defines malicious harassment [Reference Paragraph 4Q (Subsection 4Q.2)], which defines perjury in the first degree [Reference Paragraph 4V (Subsection 4V.2 through 4V.3)], and RCW § 9A.72.050, which defines perjury and false swearing [Reference Paragraph 4W (Subsection 4W.2 through 4W.3)], and RCW § 9A.80.010, which defines official misconduct [Reference Paragraph 4Y

(Subsection 4Y.2 through 4Y.8)], and the First Amendment, *in that the Supreme Court held that the Due Process Clause of the Fourteenth Amendment applies the First Amendment to each state, including any local government* [Reference Paragraph 4Z (Subsection 4Z.2 through 4Z.4)], and the Second Amendment as it *is applicable to the States and political subdivisions thereof through the Fourteenth Amendment* [Reference Paragraph 4AA (Subsection 4AA.2 through 4AA.5)], and the Fourth Amendment as it *applies to the states by way of the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4BB (Subsection 4BB.2 through 4BB.12)], and the Fifth Amendment in that *"the fifth amendment prevents individuals from being deprived of life, liberty, or property without "due process of law." Due process extends to all persons and corporate entities. The Fourteenth Amendment explicitly binds the states with due process protections, through selective incorporation* [Reference Paragraph 4CC (Subsection 4CC.2 through 4CC.6)], and the Sixth Amendment in that *the Supreme Court has applied the protections of this amendment to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4DD (Subsection 4DD.2 through 4DD.5)], and the Eighth Amendment in that *in Louisiana ex rel. Francis v. Resweber 329 U.S. 459 (1947), the Supreme Court assumed that the Cruel and Unusual Punishments Clause applied to the states. In Robinson v. California, 370 U.S. 660 (1962), the Court ruled that clause did apply to the states through the Due Process Clause of the Fourteenth Amendment* [Reference Paragraph 4EE (Subsection 4EE.2 through 4EE.4)], and the Fourteenth Amendment in that *its Due Process Clause has been used to apply most of the Bill of Rights to the states. This clause has also been used to recognize: (1) substantive due process rights, such as parental and marriage rights; and (2) procedural due process rights requiring that certain steps, such as a hearing, be followed before a person's "life, liberty, or property" can be taken away. The amendment's Equal Protection Clause requires states to provide equal protection under the law to all people within their jurisdictions* [Reference Paragraph 4FF (Subsection 4FF.2 through 4FF.5)], and the Civil Rights Act of 1964, *which outlines under Title VI, "[the prevention of] discrimination by government agencies that receive federal funding* [Reference Paragraph 4GG (Subsection 4GG.2 through 4GG.4)].

**3.23** The Plaintiff was severely injured during the traffic stop. The Plaintiff, Mr. Friedmann suffered injuries to his wrists and to the rotators of both shoulders as a result of being handcuffed for a time span exceeding 7 hours, which have been corroborated and substantiated by medical x-rays, medical records, and hospital visits, beginning on the date of November 3, 2007. The Plaintiff was also forced to undergo surgery in both hands in order to relieve pain relating to the 7 hours of detention which had caused the tendons in the Plaintiff's hand to swell to excruciating levels of pain, these two surgeries amounting to over $5,000.00. In addition the Plaintiff was diagnosed with severe Post Traumatic Stress Disorder, directly attributable to the incident of November 3, 2007, and has been under constant care and treatment for this disorder since that time, yet has suffered sleeplessness, anxiety, high stress, fatigue, lack of focus, sexual dysfunction, all which have yet to be relieved.

**3.24** Following the events which took place on the date of November 3, 2007, the Plaintiff's property was held without cause or reason until the date of July 27, 2008, at which time the Plaintiff's property was returned to him with more than $3,500.00 in damages.

**3.25** The Plaintiff additionally suffered the loss of school funding, due to the fact that the Washington State Patrol seized the Plaintiff's Arabic textbook as evidence. The Plaintiff was forced to change colleges in order to continue his education. The Plaintiff was further scarred by the attempt made by the Washington State Patrol to label him as a terrorist for simply studying Arabic for a pending commission with the United States Army. The incident further resulted in the Plaintiff being disqualified from his selection with the Department of Homeland Security, based upon the presumption of Criminal Conduct.

**3.26** The Washington State Patrol, following the illegal search and seizure of the Plaintiff's vehicle and property, and in violation of the laws of the State of Washington which indicate that only firearms directly involved in a crime can be seized, held three firearms belonging to the Plaintiff, from the date of November 3, 2007, through the date of July 28, 2008. The Washington State Patrol in direct violation of Washington State Patrol Regulations, which indicate that only firearms directly involved in a crime are subject to testing at the Washington State Patrol Crime Lab, submitted all three of the

Plaintiffs firearms to the Washington State Patrol Crime Lab, where the three firearms, legally owned and legally carried by the Plaintiff on the date of November 3, 2007, were test fired by the Washington State Crime Lab technician Defendant Terry Franklin, after which Terry Franklin then engraved all three firearms, defacing all three firearms to a loss of value of $3,500.00.

**3.28**    On the date of July 27, 2008, following the above losses, the Plaintiff, Mr. Friedmann received word from the Pierce County Prosecuting Attorney that the case against the Plaintiff had been closed and dismissed. This occurred without the Plaintiff ever being allowed proper due process in order to exonerate or provide the facts of the incident in order to relieve the damages suffered due to the actions of the Washington State Patrol who provided false and misleading statements to a legal proceeding as well as the news media and media outlets, defaming, slandering and libeling the Plaintiff's name.

**3.29**    Defendant, Trooper Sam Ramirez accosted Plaintiff Friedmann in the lobby of the Washington State Patrol Headquarters, following the incident of November 3, 2007, and forcibly placed the Plaintiff against the wall and pressed the muzzle of his firearm into the back of the Plaintiff's head, indicating that "if you move I will blow your brains out, you are already on a short leash around here".

**3.30**    The Washington State Patrol additionally provided false and misleading information to multiple employers which resulted in the Plaintiff further still being denied employment, including the Department of Homeland Security, the United States Army, and Bullseye Gun Range in Tacoma. The false arrest additionally remained on the Plaintiff's record even after the fact that the case was dismissed and closed, and regardless of the fact that no crime had occurred, the Plaintiff had to live with the arrest on his record for more than two years.

**3.31**    On the date of November 3, 2007, the Washington State Patrol acted upon a false report made by Randy Flores. The Washington State patrol Troopers involved in this incident did not verify that the incident had in fact occurred, nor did they witness the events alleged. While the Washington State Patrol may have had a reason to initiate a traffic stop in order to make contact with the Plaintiff, in order to determine whether or

not the allegations made were in fact true, all other actions following the traffic stop were unwarranted, without cause or reason, and criminal in nature and in violation of the Plaintiff's Constitutional Rights.

## IV. LIABILITY AND DAMAGES

A.    **FIRST CAUSE OF ACTION: FALSE ARREST**

**4A.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4A.2.**  Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin falsely and wrongfully arrested Plaintiff Friedmann and transported him to Washington State Patrol Headquarters in Tacoma, from his automobile, where Detective Gunderman and Sergeant Olsen charged Plaintiff Friedmann and Christopher Noll transported Plaintiff Friedmann to jail against his will, following seven hours of forced detention in restraints. The conduct of Defendants and each of them in initiating the Plaintiff's detention and arrest as described above constituted a false arrest and a false imprisonment of the Plaintiff. By reason of the above, the Plaintiff's reputation has been brought into public scandal, disrepute and disgrace, and his ability to function properly has been greatly hindered, causing him to suffer emotional trauma and harm.

**4A.3.**  The actions of all Defendant officers in detaining, interrogating and arresting the Plaintiff without legal cause deprived him of his Fourth Amendment rights to be free from deprivations of liberty without due process. Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights. As a direct and proximate result of the wrongful and false arrest, Plaintiff Michael Friedmann sustained loss of income, loss of employment, loss of prospective employment, loss of college funding, the cost of relocation, loss of freedom, loss of the lawful use of his firearms, substantial monetary loss from medical treatment, pain, suffering and disability as well as severe emotional distress and anxiety, and was diagnosed with severe Post Traumatic Stress Disorder, all of which has resulted in general damages for pain and suffering in an amount to be proven at time of trial.

**B.    SECOND CAUSE OF ACTION: FALSE IMPRISONMENT**

**4B.1.**    Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4B.2.**    This arrest and imprisonment of the Plaintiff by said Defendants was done deliberately, with malice and oppression, and in conscious disregard of the Plaintiff's rights. As a direct and proximate result of Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Sergeant Tom Martin and Tom Olsen, and Detective Juli Gunderman's false arrest and falsification of Mr. Friedmann's arrest report, Mr. Friedmann was wrongfully incarcerated, sustained loss of income, loss of employment, loss of prospective employment, loss of college funding, the cost of relocation, loss of freedom, loss of the lawful use of his firearms, substantial monetary loss from medical treatment, pain, suffering and disability as well as severe emotional distress and anxiety, and was diagnosed with severe Post Traumatic Stress Disorder, all of which has resulted in general damages for pain and suffering in an amount to be proven at time of trial.

**C.    THIRD CAUSE OF ACTION: VIOLATION OF TITLE 42 U.S.C. § 1983**

**4C.1.**    Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4C.2.**    The Civil Rights Act of 1866, 42 U.S.C. § 1981 (a), provides in part: "All persons within the jurisdiction of the United States shall have the same right in every State...to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens..." The following provisions of Washington law constitute "laws and proceedings for the security of person and property" within the meaning of 42 U.S.C. § 1981 (a) which are enjoyed by citizens: (a) Wash. Const., Art. I, § 24, which provides: "The right of the individual citizen to (b) bear arms in defense of himself, or the state, shall not be impaired..." (b) RCW § 9.41.070(1), which provides for issuance of a license to any person "to carry a pistol concealed on his or her person within this state for five years from date of issue, for the purposes of protection or while engaged in business, sport, or while traveling..." (c) such

other laws which authorize or do not prohibit the possession of firearms. The Defendants aforementioned have denied the Plaintiff through their actions on the date of November 3, 2007, the full and equal benefit of all of the above laws and proceedings for the security of person and property as is enjoyed by citizens.

**4C.3.**   Defendant's Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Sergeant Tom Martin and Tom Olsen, and Detective Juli Gunderman wrongfully deprived Plaintiff Michael Friedmann of his federally guaranteed Constitutional and other legal rights in violation of 42 U.S.C. § 1983 by actions, including, but not limited to: making an arrest which was wrongful; wrongfully transporting Plaintiff from his automobile to jail and detaining Plaintiff; and falsifying his arrest record. The actions of all Defendant officers in detaining, interrogating and arresting the Plaintiff without legal cause deprived him of his Fourth Amendment rights to be free from deprivations of liberty without due process. The actions of all Defendant officers in detaining, arresting, and searching the Plaintiff deprived him of his Constitutional right to be free from deprivations of liberty without due process of law and freedom from summary punishment. Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights. As a direct and proximate result of Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Sergeant Tom Martin and Tom Olsen, and Detective Juli Gunderman's actions, causing a deprivation of Plaintiff's federally guaranteed Constitutional and other legal rights, Plaintiff sustained injuries thereby resulting in loss of freedom, substantial fees, extensive treatment, loss of income, loss of employment, loss of prospective employment, loss of college funding, the cost of relocation, loss of use of his firearms, mental pain, suffering, and disability as well as emotional distress and anxiety, and was diagnosed with severe Post Traumatic Stress Disorder, all of which has resulted in general damages for pain and suffering in an amount to be proven at time of trial.

**D.      FOURTH CAUSE OF ACTION: NEGLIGENT SUPERVISION AND HIRING**

**4D.1.**   Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them

herein as if set forth in full.

**4D.2.**  Plaintiff, upon information and belief, alleges that Defendant Washington State Patrol failed to adequately conduct a background check prior to hiring Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Tom Olsen, Sam Ramirez and Juli Gunderman. After said hiring, Plaintiff believes Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Tom Olsen, Sam Ramirez and Juli Gunderman conducted themselves in an inappropriate fashion in the past, violating standards promulgated by their employer, the Washington State Patrol, and that the Washington State Patrol knew or should have known of Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Tom Olsen, Sam Ramirez and Juli Gunderman's continued unlawful conduct. Instead, the flagrant abuses committed by Troopers Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Sergeants Tom Martin, Tom Olsen and Sam Ramirez and Detective Juli Gunderman were discovered only in the records obtained through the discovery of public records, which indicate a decade long pattern of criminal conduct, misconduct, falsifying of records and reports, destruction of evidence, evidence tampering, coercion, intimidation, assault and battery, threats of bodily harm, abuse of power, to name only a few.

**4D.3.**  Plaintiff further alleges that Defendant Washington State Patrol failed to reprimand, sanction, or in any way, appropriately supervise and rectify the unlawful conduct of Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Tom Olsen, Sam Ramirez and Juli Gunderman. Had Defendant Washington State Patrol properly supervised Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Tom Olsen, Sam Ramirez and Juli Gunderman, it would have determined that Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Tom Olsen, Sam Ramirez and Juli Gunderman were unsuitable for patrol, supervisory and investigative work and should have taken steps to rectify their unlawful conduct, including, but not limited to, discharging them from the Washington State Patrol. Had Defendant Washington State Patrol not negligently supervised and retained Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Tom Olsen, Sam Ramirez and

Juli Gunderman, the Plaintiff would not have suffered false arrest and imprisonment resulting in substantial loss of income, fees, and treatment, loss of freedom, loss of employment, loss of prospective employment, loss of college funding, the cost of relocation, loss of use of his firearms, mental pain, suffering, and disability as well as emotional distress and anxiety, and was diagnosed with severe Post Traumatic Stress Disorder, all of which has resulted in general damages for pain and suffering in an amount to be proven at time of trial.

**E.    FIFTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**4E.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4E.2.**  Defendants Washington State Patrol and Troopers Nicholas Casto, Robert Howson, Christopher Noll, and James Meldrum, and Sergeants Tom Martin, Tom Olsen, and Sam Ramirez and Detective Juli Gunderman knew, or should have known, that the actions allowed by the Washington State Patrol performed by Troopers Nicholas Casto, Robert Howson, Christopher Noll, and James Meldrum, and Sergeants Tom Martin, Tom Olsen, and Sam Ramirez and Detective Juli Gunderman would cause significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, would cause damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**F.    SIXTH CAUSE OF ACTION: DEFAMATION, LIBEL, AND SLANDER**

**4F.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4F.2.**  Defendants Washington State Patrol and Troopers Nicholas Casto, Robert Howson, Christopher Noll, and James Meldrum, and Sergeants Tom Martin, Tom Olsen, and Sam Ramirez and Detective Juli Gunderman all prepared affidavits, narratives, and

reports which were falsified, untrue and misleading, these statements were then utilized and further perverted by Detective Juli Gunderman, who then prepared a press release which she then knowingly and willingly released to the news media, including KOMO, KING, KIRO and The Tacoma News Tribune, alleging actions, instances, occasions, incidents, scenarios, facts and revelations which never at any time occurred.

4F.3.    In releasing a falsified representation of the actual facts, and in releasing the name of the Plaintiff, under allegations of actions which were not substantiated by evidence, nor corroborated by any witnesses or actions, let alone the violations of the laws of the State of Washington, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman all perpetrated the act of defamation, libel and slander, under RCW § 9.58.080 and RCW § 9.58.010, which indicates and "clearly defines libel as, 'every malicious publication by writing, printing, picture, effigy, sign, radio broadcasting or which shall in any manner transmit the human voice or reproduce the same from records or other appliances or means, which shall tend (1) to expose any living person to hatred, contempt, ridicule, or obloquy, or to deprive him of the benefit of public confidence or social intercourse, or (3) to injure any person, corporation or association of persons in his or their business or occupation, shall be libel'. Every person who publishes a libel shall be guilty of a gross misdemeanor" to which such actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, deprived the Plaintiff of the benefit of public confidence and social intercourse, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by defamation causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## G.    SEVENTH CAUSE OF ACTION: HARASSMENT

4G.1.    Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4G.2.**  The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute harassment under RCW § 9A.46.020 and RCW § 9A.46.010, in which the Plaintiff was targeted on the date of November 3, 2007, by several Washington State Patrol Troopers of whom the Plaintiff had previously encountered. The Plaintiff, through the not for profit corporation known as the Washington State Police Investigations Commission, has since the year 2000, filed complaints of harassment and misconduct against Washington State Patrol Troopers Nicholas Casto, Robert Howson, John Hazuka, "John Doe" Clevenger, as well as Sergeant Olsen and Sergeant Ramirez. Coincidently, these were the same individuals who initiated the traffic stop on the date of November 3, 2007, or were involved in the subsequent actions directly attributing to the injuries and damages suffered by the Plaintiff.

**4G.3.**  The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman all perpetrated the act of harassment, which is clearly defined under RCW § 9A.46.020, "as '(1) a person is guilty of harassment if, (a) without lawful authority, the person knowingly threatens, (i) to cause bodily injury immediately or in the future to the person threatened or to any other person; of (iii) to subject the person threatened or any other person to physical confinement or restraint; or (iv) maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and (b) the person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.'" It is clearly defined that "(2)(a) a person who harasses another is guilty of a gross misdemeanor" and the actions by the Defendants, constituting harassment under RCW § 9A.46.020, caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by harassment causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## H.    EIGHTH CAUSE OF ACTION: MALICIOUS PROSECUTION

**4H.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4H.2.**  The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute malicious prosecution under RCW § 9.62.010, which "defines malicious prosecution as 'every person who shall, maliciously and without probable cause therefore, cause or attempt to cause another to be arrested or proceeded against for any crime of which he or she is innocent, (2) if such crime be a gross misdemeanor or misdemeanor, shall be guilty of a misdemeanor." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman all perpetrated the act of malicious prosecution, to which the Defendants had no evidence to support their egregious allegations, to which the Defendant Juli Gunderman admitted that "everything was circumstantial" and that "nothing that [Friedmann] had done was illegal" and that "nothing that [Friedmann] had was illegal" substantiates the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of malicious prosecution causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an

amount to be proven at time of trial.

## I.     NINTH CAUSE OF ACTION: SEARCH WITHOUT WARRANT

**4I.1.**     Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4I.2.**     The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 10.79.040, which "defines search without warrant unlawful, '(1) it shall be unlawful for any policeman or other peace officer to enter and search any private dwelling [automobile] house or place of residence without the authority of a search warrant issued upon a complaint as by law provided, (2) any policeman or other peace officer violating the provisions of this section is guilty of a gross misdemeanor." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin all perpetrated the act of search without warrant, and illegal search and seizure, immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of RCW § 10.79.040.

**4I.3.**     Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and

seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of search without warrant causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**J.      TENTH CAUSE OF ACTION: DENIAL OF CIVIL RIGHTS**

**4J.1.**    Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4J.2.**    The actions of Defendant officers and each of them in watching their fellow officers use unreasonable force against the Plaintiff, without attempting to stop it, deprived the Plaintiff of his Constitutional right to be free from the use of excessive force and freedom from summary punishment. Defendants, and each of them, subjected the Plaintiff to such deprivations by malice and/or reckless and conscious disregard of his rights. The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 9.91.010, which "defines the denial of civil rights, (b) deny is hereby defined to include any act which directly or indirectly, or by subterfuge, by a person or his agent or employee, results or is intended or calculated to result in whole or in part in any discrimination, distinction, restriction, or unequal treatment, (2)…shall be guilty of a misdemeanor." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin all perpetrated the act of denying the Plaintiff his civil rights, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, immediately following the traffic stop initiated on

the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of RCW § 9.91.010.

     **4J.3.**   Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of denying the Plaintiff his civil rights in violation of RCW § 9.91.010 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**K.**     **ELEVENTH CAUSE OF ACTION: ARREST WITHOUT WARRANT**

     **4K.1.**   Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

     **4K.2.**   The actions of the Defendant, Washington State Patrol, and Defendants

Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 10.31.100, which *"defines arrest without warrant, indicating that 'a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer.'"* The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin all perpetrated the act of arrest without warrant against the Plaintiff in direct violation of RCW § 10.31.100, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and arrest without warrant immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of RCW § 10.31.100.

**4K.3.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the

embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of arrest without warrant against the Plaintiff in violation of RCW § 10.31.100 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## L.    TWELFTH CAUSE OF ACTION: MALICIOUS MISCHIEF IN THE FIRST DEGREE

**4L.1.**    Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4L.2.**    The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 9A.48.070, which defines "malicious mischief in the first degree, (1) a person is guilty of malicious mischief in the first degree if he knowingly and maliciously: (a) causes physical damage to the property of another in an amount exceeding one thousand five hundred dollars, (2) malicious mischief in the first degree is a class B felony." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Steven Ostrander, Sean Hartsock, and Terry Franklin all perpetrated the act of malicious mischief against the Plaintiff and his personal property in direct violation of RCW § 9A.48.070, by maliciously damaging and defacing the property belonging to the Plaintiff to an exact amount of $3,500.00, immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants

Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Sean Hartsock, Steven Ostrander, and Terry Franklin were illegal, and constituted a violation of RCW § 9A.48.070, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of malicious mischief and the destruction of the Plaintiff's personal property in violation of RCW § 9A.48.070 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**M.      THIRTEENTH CAUSE OF ACTION: ASSAULT IN THE FIRST DEGREE**

**4M.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4M.2.**  Defendants and each of them committed acts toward the Plaintiff as described above which constitute an assault and battery upon the Plaintiff. All conduct described herein was nonconsensual, unjustified, unlawful and offensive. As a direct and proximate result of the intentional acts of the Defendants and each of them as complained herein, the Plaintiff suffered and continues to suffer great and grievous physical pain and emotional anguish and distress. As a direct and proximate result of the acts of the Defendants and each of them, the Plaintiff sustained severe and continuing shock to his nervous system, mental anguish, mortification, humiliation, loss of good health and sleep, all to his damage according to proof at trial. The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen and Sam Ramirez constitute a violation of RCW § 9A.36.011, which defines "assault in the first degree, (1) a person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: (a) assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or (c) assaults another and inflicts great bodily harm. (2) assault in the first degree is a class A felony." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James

Meldrum, Tom Olsen, Sam Ramirez and Tom Martin all perpetrated the act of assault in the first degree on two separate occasions against the Plaintiff in direct violation of RCW § 9A.36.011, by on the first occasion using firearms against the Plaintiff in a highly threatening manner to which great bodily harm was inflicted and to which death may have been inflicted, through which threats of additional bodily harm were made, in intimidating fashion, utilizing firearms and aggression, without cause or reason, and on a second occasion to which Defendant Sam Ramirez placed his firearm against the back of the Plaintiff's head indicating that death would definitively occur if the Plaintiff moved. Acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and assault in the first degree immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen and Sam Ramirez and Tom Martin were illegal, and constituted a violation of RCW § 9A.36.011.

**4M.3.**  Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional

distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of assault in the first degree against the Plaintiff in violation of RCW § 9A.36.011 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

N.    **FOURTEENTH CAUSE OF ACTION: ASSAULT IN THE SECOND DEGREE**

    **4N.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

    **4N.2.**  The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen and Sam Ramirez constitute a violation of RCW § 9A.36.021, which defines "assault in the second degree, (1) a person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: (a) intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or (c) assaults another with a deadly weapon; or (f) knowingly inflicts bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture. (2) (a) except as provided in (b) of this subsection, assault in the second degree is a class B felony." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen, Sam Ramirez and Tom Martin all perpetrated the act of assault in the second degree on three separate occasions against the Plaintiff in direct violation of RCW § 9A.36.021, by on the first occasion using firearms against the Plaintiff in a highly threatening manner to which great bodily harm was inflicted and to which death may have been inflicted, through which threats of additional bodily harm were made, in intimidating fashion, utilizing firearms and aggression, without cause or reason, and on a second occasion to which Defendant Sam Ramirez placed his firearm against the back of the Plaintiff's head indicating that death would

definitively occur if the Plaintiff moved, to which a third occasion was established by the unlawful and unwarranted forced removal and restraint for a time span amounting to seven hours which resulted in physical injuries requiring surgery and damage to the Plaintiff's shoulders, wrists and hands, "causing such pain or agony as to be the equivalent of that produced by torture." Acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and assault in the second degree with actions equivalent to torture immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen and Sam Ramirez and Tom Martin were illegal, and constituted a violation of RCW § 9A.36.021.

4N.3.    Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical

injuries, loss of college funding, and forced relocation, were further aggravated by the act of assault in the second degree and torture against the Plaintiff in violation of RCW § 9A.36.021 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**O.     FIFTEENTH CAUSE OF ACTION: RECKLESS ENDANGERMENT**

**4O.1.**   Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4O.2.**   The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Sam Ramirez, Tom Olsen and Tom Martin constitute a violation of RCW § 9A.36.050, which defines that "(1) a person is guilty of reckless endangerment when he or she recklessly engages in conduct not amounting to drive-by shooting but that creates a substantial risk of death or serious physical injury to another person. (2) Reckless endangerment is a gross misdemeanor." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Sam Ramirez, Tom Olsen and Tom Martin all perpetrated the act of reckless endangerment against the Plaintiff in direct violation of RCW § 9A.36.050, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and recklessly endangering the lives of the Plaintiff as well as other motorists on the roadway while proceeding to the point of incident and subsequent to the traffic stop at which time the Plaintiff was assaulted by the Defendants immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the

traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen, Sam Ramirez and Tom Martin were illegal, and constituted a violation of RCW § 9A.36.050, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of reckless endangerment against the Plaintiff in violation of RCW § 9A.36.050 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## P.    SIXTEENTH CAUSE OF ACTION: COERCION

**4P.1.**   Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4P.2.**   The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 9A.36.070, which that "a person is guilty of coercion if by use of a threat he compels or induces a person to engage in conduct which the latter has a legal right to abstain from, or to abstain from conduct which he has a legal right to engage in. (2) 'Threat' as used in this section means: (a) to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time. (3) Coercion is a gross misdemeanor." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen, Sam Ramirez, Juli Gunderman and Tom Martin all perpetrated the act of coercion against the Plaintiff in direct violation of RCW § 9A.36.070, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and coercion immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants acted with force and unjustified violence

1    and hostility, forcing the Plaintiff to "abstain from conduct which he [had] a legal right

2    to engage in" and further "compelled" the Plaintiff through a show of force and the

3    appearance of violent reprisal to "engage in conduct" which the Plaintiff had "a legal

     right to abstain from" furthered by the subsequent actions of Juli Gunderman and Tom

4    Olsen, who additionally coerced a statement from the Plaintiff, and mislead the

5    Plaintiff to believe that the situation would be resolved by his cooperation. The fact that

6    the Defendants had no evidence to support their egregious allegations, no probable

7    cause, and no legal basis in which to act in the fashion in which the acted against

     Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated

8    based solely upon a third party, hearsay statement, alleging speeding, and considering the

9    fact that this allegation was never supported by evidence or witnessed by any

10   Washington State Trooper, the actual traffic stop itself was illegal, and following the

11   traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson,

     Christopher Noll, James Meldrum, Tom Olsen, Juli Gunderman and Tom Martin were

12   illegal, and constituted a violation of RCW § 9A.36.070.

13        **4P.3.**   Upon later determination, and corroboration by the Plaintiff, through

14   documentation and explanation, substantiating the fact that no crime had occurred, and

15   that despite the fact that no crime, and no evidence of a crime existed, the Defendant

     Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher

16   Noll, James Meldrum, Tom Martin, Tom Olsen and Juli Gunderman proceeded in a

17   malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass,

18   search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime

     which he had not committed, nor perpetrated, and to which no evidence existed

19   substantiating any involvement of the Plaintiff to even the initial complaint and

20   allegation of speeding made by alleged witness Randy Flores, to which these actions

21   caused significant emotional distress to Plaintiff Friedmann and his immediate family,

22   and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest,

     incarceration, fees, and loss of use of his firearms, loss of employment, loss of

23   prospective employment, physical injuries, loss of college funding, and forced

24   relocation, were further aggravated by the act of coercion against the Plaintiff in

25   violation of RCW § 9A.36.070 causing damages in the form of mental pain, suffering,

and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**Q.    SEVENEENTH CAUSE OF ACTION: MALICIOUS HARASSMENT**

**4Q.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4Q.2.**  The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, constitute a violation of RCW § 9A.36.080, which defines that "(1) a person is guilty of malicious harassment if he or she maliciously and intentionally commits one of the following acts because of his or her perception of the victim's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap: (a) causes physical injury to the victim or another person; (b) causes physical damage to or destruction of the property of the victim or another person; or (c) threatens a specific person or group of persons and places that person, or members of the specific group of persons, in reasonable fear of harm to person or property. (7) Malicious harassment is a class C felony." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson both perpetrated the act of malicious harassment against the Plaintiff in direct violation of RCW § 9A.36.080, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of calling the Plaintiff a "white supremacist" based solely upon his appearance, furthered by the claim in which both Defendants accused the Plaintiff of being a "terrorist" for studying Arabic at Tacoma Community College for the purposes of a military commission, and furthered by the derogatory and abusive statements made by both Defendants following the revelation by the Plaintiff that he was in fact Jewish, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of malicious harassment against the Plaintiff in violation of RCW § 9A.36.080 causing damages in the form of mental

pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**R.    EIGHTEENTH CAUSE OF ACTION: KIDNAPPING IN THE FIRST DEGREE**

**4R.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4R.2.**  The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen, Tom Martin and Juli Gunderman constitute a violation of RCW § 9A.40.020, which defines "kidnapping in the first degree, (1) a person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent: (b) to facilitate commission of a felony or flight thereafter; or (c) to inflict bodily injury to him; or (d) to inflict extreme mental distress on him or a third person. (2) Kidnapping in the first degree is a class A felony. The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Olsen, Juli Gunderman and Tom Martin all perpetrated the act of kidnapping in the first degree against the Plaintiff in direct violation of RCW § 9A.40.020, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and kidnapping in the first degree immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of RCW § 9A.40.020, to which the Plaintiff was forcibly removed from his automobile,