forced against his will into restraints, restrained for seven hours, forced to endure pain and agony equivalent to that of torture, to which the actions of the Defendants were used "to facilitate [the] commission of a felony thereafter" and to which the actions of the Defendants were used "to inflict bodily injury on him", and to which the actions of the Defendants were used "to inflict extreme mental distress" on the Plaintiff, despite the fact that no crime, and no evidence of a crime existed.

**4R.3.**   The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Tom Olsen and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of kidnapping in the first degree against the Plaintiff in violation of RCW § 9A.40.020 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**S.   NINETEENTH CAUSE OF ACTION: UNLAWFUL IMPRISONMENT**

**4S.1.**   Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4S.2.**   The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 9A.40.040, which defines "unlawful imprisonment, (1) a person is guilty of unlawful imprisonment if he knowingly restrains another person, (2) unlawful imprisonment is a class C felony." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher

Noll, James Meldrum, and Tom Martin all perpetrated the act of unlawful imprisonment against the Plaintiff in direct violation of RCW § 9A.40.040, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment and arrest without warrant immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of RCW § 9A.40.040.

    **4S.3.**   Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of unlawful imprisonment against the Plaintiff in violation of RCW § 9A.40.040 causing damages in the form of mental pain, suffering, and

disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**T.      TWENTIETH CAUSE OF ACTION: STALKING**

**4T.1.**   Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4T.2.**   The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Sam Ramirez and Tom Olsen, constitute a violation of RCW § 9A.46.110, which defines "stalking, (1) a person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime: (a) he or she intentionally and repeatedly harasses or repeatedly follows another person; and (b) the person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and (c) the stalker either: (i) intends to frighten, intimidate, or harass the person; or (ii) knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person. (e) Repeatedly means on two or more occasions. (5)(b) A person who stalks another person is guilty of a gross misdemeanor. (5)(c) A person who stalks another is guilty of a class C felony if any of the following applies: (iv) the stalker was armed with a deadly weapon, as defined in RCW § 9.94A.602, while stalking the person; (v)(B) the stalker stalked the victim to retaliate against the victim for an act the victim performed during the course of official duties or to influence the victim's performance of official duties; or (vi) the stalker's victim is a current, former, or prospective witness in an adjudicative proceeding, and the stalker stalked the victim to retaliate against the victim as a result of the victim's testimony or potential testimony." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Sam Ramirez and Tom Olsen all perpetrated the act of stalking, particularly Defendant Tom Olsen, who had more then four previous encounters with the Plaintiff, perpetuating actions intended to

intimidate and coerce and by which the Defendant Tom Olsen was reprimanded by the Washington State Patrol Command Staff, to which the actions against the Plaintiff were in direct violation of RCW § 9A.46.110, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and arrest without warrant immediately following the traffic stop initiated on the date of November 3, 2007, which constituted the act of stalking the Plaintiff to such ends, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann.

 **4T.3.**  Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Sam Ramirez and Tom Olsen proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of stalking the Plaintiff in violation of RCW § 9A.46.110 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**U.** **TWENTY-FIRST CAUSE OF ACTION: ROBBERY IN THE FIRST DEGREE**

 **4U.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them

herein as if set forth in full.

**4U.2.** The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 9A.56.200 which defines "robbery in the first degree, (1) a person is guilty of robbery in the first degree if: (a) in the commission of a robbery or of immediate fight therefrom, he or she: (i) is armed with a deadly weapon; or (ii) displays what appears to be a firearm or other deadly weapon; or (iii) inflicts bodily injury. (2) Robbery in the first degree is a class A felony. The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin all perpetrated the act of robbery in the first degree against the Plaintiff in direct violation of RCW § 9A.56.200, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and robbery in the first degree by without cause or reason, and at gunpoint with the imminent threat of death and/or deadly force and immediate and definitive bodily harm, removed from the Plaintiff's personal possession, personal property amounting to more than $10,000 in value, immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of RCW § 9A.56.200.

**4U.3.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher

Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of robbery in the first degree against the Plaintiff in violation of RCW § 9A.56.200 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## V.    TWENTY-SECOND CAUSE OF ACTION: PERJURY IN THE FIRST DEGREE

**4V.1.**   Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4V.2.**   The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 9A.72.020, which defines "perjury in the first degree, (1) a person is guilty of perjury in the first degree if in any official proceeding he makes a materially false statement which he knows to be false under an oath required or authorized by law. (2) Knowledge of the materiality of the statement is not an element of this crime, and the actor's mistaken belief that his statement was not material is not a defense to a prosecution under this section. (3) Perjury in the first degree is a class B felony." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman and Tom Martin all perpetrated the act of perjury in the first degree against the Plaintiff in direct violation of RCW § 10.31.100, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement

officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, arrest without warrant, and in producing a completely falsified investigation with charging documents alleging to an act or circumstances which had not occurred, to which the aforementioned Defendants all signed their sworn affidavits under the penalty of perjury under the laws of the State of Washington, to which these sworn statements and these sworn affidavits were perjured and misleading as to the true nature of the circumstances pertaining to the scenario in which the Plaintiff was first stopped, then detained, then arrested, immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman and Tom Martin were illegal, and constituted a violation of RCW § 9A.72.020.

4V.3.   Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical

injuries, loss of college funding, and forced relocation, were further aggravated by the act of perjury in the first degree against the Plaintiff in violation of RCW § 9A.72.020 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## W.    TWENTY-THIRD CAUSE OF ACTION: PERJURY AND FALSE SWEARING

**4W.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4W.2.**  The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 9A.72.050, which defines "perjury and false swearing, (1) where, in the course of one or more official proceedings, a person makes inconsistent material statements under oath, the prosecution may proceed by setting forth the inconsistent statements in a single count alleging in the alternative that one or the other was false and known by the defendant to be false. In such case it shall not be necessary for the prosecution to prove which material statement was false but only that one or the other was false and known by the defendant to be false." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman and Tom Martin all perpetrated the act of perjury and false swearing against the Plaintiff in direct violation of RCW § 9A.72.050, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and perjury and false swearing and in producing a completely falsified investigation with charging documents alleging to an act or circumstances which had not occurred, to which the aforementioned Defendants all signed their sworn affidavits under the penalty of perjury under the laws of the State of Washington, to which these sworn statements and these sworn affidavits were perjured and misleading as to the true nature of the circumstances pertaining to the scenario in which the Plaintiff was first stopped, then detained, then arrested, immediately following the

traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman, and Tom Martin were illegal, and constituted a violation of RCW § 9A.72.050.

**4W.3.**  Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of perjury and false swearing against the Plaintiff in violation of RCW § 9A.72.050 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## X.    TWENTY-FOURTH CAUSE OF ACTION: TAMPERING WITH PHYSICAL EVIDENCE

**4X.1.**  Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them

herein as if set forth in full.

**4X.2.** The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of RCW § 9A.72.150, which defines "tampering with physical evidence, (1) a person is guilty of tampering with physical evidence if, having reason to believe that an official proceeding is pending or about to be instituted and acting without legal right or authority, he: (a) destroys, mutilates, conceals, removes, or alters physical evidence with intent to impair its appearance, character, or availability in such pending or prospective official proceeding; or (b) knowingly presents or offers any false physical evidence. (2) "Physical Evidence" as used in this section includes any article, object, document, record, or other thing of physical substance. (3) Tampering with physical evidence is a gross misdemeanor." The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman, Sean Hartsock, Steven Ostrander, and Tom Martin all perpetrated the act of tampering with physical evidence in direct violation of RCW § 9A.72.150, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, by allowing firearms belonging to the Plaintiff, which were held illegally and without cause to be removed without the knowledge of Washington State Patrol command staff and Defendant Lieutenant Sean Hartsock, from property and evidence, to which the three firearms belonging to the Plaintiff were subsequently defaced and "mutilated" by Defendant Terry Franklin, to which additional "evidence" being held without cause was vandalized and "mutilated" by Defendant Steven Ostrander, to which the 911 tape which prompted the traffic stop on the date of November 3, 2007, was subsequently destroyed on the date of February 12, 2008, when this was evidence to an "official proceeding." Further aggravated by the fact that the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was

illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman, Sean Hartock, Terry Franklin, Steven Ostrander, and Tom Martin were illegal, and constituted a violation of RCW § 9A.72.150.

4X.3.   Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin, Sean Hartsock, Terry Franklin, Steven Ostrander, and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of tampering with physical evidence in violation of RCW § 9A.72.150 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## Y.    TWENTY-FIFTH CAUSE OF ACTION: OFFICIAL MISCONDUCT

4Y.1.   Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

4Y.2.   The actions of the Defendants Sergeant Tom Olsen, Sergeant Sam E. Ramirez, Sergeant Tom Martin, Detective Juli Gunderman, formerly Juli Mitchell, Trooper Nicholas Casto, Trooper James Meldrum, and Trooper Christopher Noll, Trooper Robert E. Howson, Michael Hopkins, Lieutenant Sean Hartsock, Steven Ostrander, Terry Franklin, and Lieutenant Julie Johnson constitute a violation of

RCW § 9A.80.010, which defines "official misconduct, (1) a public servant is guilty of official misconduct if, with intent to obtain benefit or to deprive another person of a lawful right or privilege: (a) he intentionally commits an unauthorized act under color of law; or (b) he intentionally refrains from performing a duty imposed upon him by law. (2) Official misconduct is a gross misdemeanor."

4Y.3.   The Defendant Washington State Patrol, and Defendants Sergeant Tom Olsen, Sergeant Sam E. Ramirez, Sergeant Tom Martin, Detective Juli Gunderman, formerly Juli Mitchell, Trooper Nicholas Casto, Trooper James Meldrum, and Trooper Christopher Noll, Trooper Robert E. Howson, Michael Hopkins, Lieutenant Sean Hartsock, Steven Ostrander, Terry Franklin, and Lieutenant Julie Johnson all perpetrated the act of official misconduct in direct violation of RCW § 9A.80.010, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, and clerks of the state, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and arrest without warrant, perpetuating and perpetrating the act of official misconduct as follows: Defendants Nicholas Casto, James Meldrum, Christopher Noll, Robert E. Howson, and Tom Martin all engaged in the act of official misconduct by initiating an illegal traffic stop against the Plaintiff on the date of November 3, 2007, to which this action was committed based solely upon a third-party, hearsay statement, to which the information itself was highly questionable, and not supported or substantiated by any other witness allegation, or any other law enforcement officer employed by either state, county, city or township. The actions of the aforementioned Defendants were taken with malicious intent, and under the very definition of "official misconduct" in which "a public servant" engages "with intent" in an effort "to deprive another person of a lawful right or privilege" in which he [the Defendants] "intentionally commit an unauthorized act under the color of law" and in which "he [or they] intentionally refrains from performing a duty imposed upon him by law" provide a basis for the charge of "official misconduct" based upon the illegal actions perpetrated before, during and after the traffic stop initiated on the date of November 3, 2007, in which paragraphs A through II are incorporated herein as if set forth in full as a basis for "official misconduct."

4Y.4.   Additionally, Defendants Tom Olsen and Sam E. Ramirez, through

threats and coercion and intimidation, on more then one occasion, not only on the date of November 3, 2007, but on dates before and after that time, engaged in the act of "official misconduct" through improper and unprofessional and highly aggressive behavior against the Plaintiff, to which they were reprimanded, and to which the Washington State Patrol was aware of their potential for unwarranted violence towards not only the Plaintiff but also Washington State citizens, in which both Defendants Tom Olsen and Sam E. Ramirez, elicited verbal threats and physical intimidation meant to coerce and force the Plaintiff to be in fear of his life and safety.

4Y.5.    Additionally, Defendant Juli Gunderman in similar fashion engaged in "official misconduct" by "depriving" the plaintiff "of a lawful right" and "privilege" in violation of due process, and in unlawful arrest, and wrongful imprisonment, despite the admission by the Defendant that "nothing he [the Plaintiff] has is illegal, and nothing he [the Plaintiff] has done is illegal, I am just concerned about what he could do with what he has so I am going to go ahead and arrest him." Without evidence and without just cause, Defendant Juli Gunderman engaged in "official misconduct", in the violation of the civil rights and criminal statutes alleged in paragraphs A through II.

4Y.6.    Defendant Michael Hopkins, as a representative of the State of Washington Risk Management Department, failed in his official capacity, to examine the merits of the original tort against the State of Washington regarding the actions taken by the Defendants against the Plaintiff on the date of November 3, 2007, and instead, based his denial of the tort and its merits on the simple fact that the Plaintiff was arrested, despite the fact that the Plaintiff was never charged, and despite the fact that the Plaintiff was never convicted. The Defendant Michael Hopkins additionally, after making his decision to deny the tort claim filed by the Plaintiff, then asked the Plaintiff for the alleged witness, Randy Flores' written affidavit, to which the Defendant Michael Hopkins would have been able to examine had the Defendant Michael Hopkins examined the case itself prior to making his determination of denial of the original tort claim. This is construed as "official misconduct" while acting in his "official" capacity, in which the Defendant "deprived" the Plaintiff "of a lawful right" and "privilege" and in which the Defendant "refrained from performing a duty imposed upon him by law."

4Y.7.    Defendants Sean Hartsock, Steven Ostrander and Terry Franklin, engaged

in the violation of RCW § 9A.80.010, in that all three Defendants were party to the intentional tampering with evidence, the intentional destruction of evidence, and the defacement of private property, and the destruction and damage of private property while left in the care of property and evidence with the Washington State Patrol. Defendant Lieutenant Sean Hartsock, was unable to explain how, or when, or why, three firearms belonging to the Plaintiff were removed from property and evidence without his knowledge, nor could Defendant Sean Hartsock, explain where the property of the Plaintiff had been taken, by whom it had been taken, for what purposes it had been taken, and subsequently who was responsible for the defacement of the property in question. This is construed as "official misconduct" in that while in his "official" capacity, Defendant Lieutenant Sean Hartsock, being the commander in charge of property and evidence for the Washington State Patrol, "intentionally commit[ted] an unauthorized act under color of law" to which Defendant Sean Hartsock should have been aware, in that only firearms directly involved in a crime are to be submitted to the crime lab for testing, as per the Washington State Patrol Regulation Manual, to which the three firearms belonging to the Plaintiff were not involved in a crime, and were being carried legally with a State of Washington Concealed Pistol License. Defendant Sean Hartsock further, in violation of RCW § 9A.80.010, "intentionally refrained from performing a duty imposed upon him by law." Additionally, Defendant Steven Ostrander, damaged property belonging to the Plaintiff while such property was in the custody of the Washington State Patrol, and further, Defendant Terry Franklin was responsible for the defacement of the three firearms belonging to the Plaintiff, to which $3,500.00 in damage was done.

**4Y.8.**   Defendant Lieutenant Julie Johnson, when made aware of the misconduct, and the direct violations of civil and criminal law by the aforementioned Defendants, failed to examine, investigate or adhere to set protocols to which such actions would be further scrutinized by the Washington State Patrol, and instead disregarded the allegations of the Plaintiff, and the actions taken by the Defendants in violation of state and federal laws, in direct violation of RCW § 9A.80.010 in which "a public servant" who "with intent to deprive another person of a lawful right or privilege" additionally "intentionally commits an unauthorized act under color of law" and who "intentionally

refrains from performing a duty imposed upon him by law" provides for a violation of "Official Misconduct" by Defendant Lieutenant Julie Johnson, to which the determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the act of official misconduct in violation of RCW § 9A.80.010 causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

### Z.    TWENTY-SIXTH CAUSE OF ACTION: VIOLATION OF THE FIRST AMENDMENT, FREEDOM OF RELIGION, FREEDOM OF SPEECH, FREEDOM OF ASSEMBLY

**4Z.1.**    Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4Z.2.**    The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of the First Amendment to the United States Constitution, in their denial of "Freedom of Religion" due to ethnicity and slanderous defamatory statements relating to Arabs and Jews, in their denial of "Freedom of Speech" due to unsubstantiated allegations which were proven untrue by statements

and documentation following the traffic stop on the date of November 3, 2007, in their denial of "Freedom of Assembly" due to the actions taken against the Plaintiff on the aforementioned date, upon which the Plaintiff was due to assemble at the Firearms Academy of Seattle. Additional infringement constitutes a violation by the above Defendants of the First Amendment in that the Supreme Court held that the Due Process Clause of the Fourteenth Amendment applies the First Amendment to each state, including any local government.

4Z.3.  The First Amendment clearly states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances" and the applicability of the Fourteenth Amendment to the First Amendment to each state and local governments constitutes a violation of this clause by the Defendant Washington State Patrol.

4Z.4.  Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the violation of the Plaintiff's First Amendment Rights, causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## AA.    TWENTY-SEVENTH CAUSE OF ACTION: VIOLATION OF THE SECOND AMENDMENT, RIGHT TO BEAR ARMS

**4AA.1.** Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4AA.2.** The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of the Second Amendment to the United States Constitution, that protects an individual's right to keep and bear arms, in the actions taken by the aforementioned Defendants, to which while legally carrying firearms, purchased legally, and legally owned by the Plaintiff, with a State of Washington Concealed Pistol License, the aforementioned Defendants forcibly, without due cause or reason, at gunpoint, when no crime had occurred, and when no instance had occurred in which the firearms belonging to the Plaintiff have been made visible to anyone, not civilian, and not law enforcement, with malice and an intent to cause fear and bodily harmed, forced the Plaintiff to disarm, removed the Plaintiff's legally owned and legally carried firearms, and illegally and without cause held said property for a time span of more then nine months.

**4AA.3.** The Second Amendment clearly indicates that "the right of the people to keep and bear Arms, shall not be infringed" to which the malicious actions taken by the Defendants, were intentional and meant to "infringe" upon the rights prescribed by the Second Amendment, and if not intentional, the outcome of the actions following the verification that no crime had occurred, resulted in the subsequent "infringement" of the Plaintiff's "right to bear arms" which constitutes a violation of this clause by the Defendant Washington State Patrol and the aforementioned Defendants in paragraph 4AA.2. The Second Amendment of the United States Constitution provides in part that "the right of the people to keep and bear Arms, shall not be infringed." The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the

equal protection of the laws." The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

**4AA.4.** Don Kates, a Civil Liberties lawyer, cites historic English usage describing the "right to keep and bear *their private arms*." Both military and nonmilitary usage of the phrase is found in the Pennsylvania "minority report" published after the ratifying convention indicating that "the people have a right to bear arms for the defense of themselves and their own state, or the United States, or for the purpose of killing game; and no law shall be passed for disarming the people or any of them, unless for crimes committed, or real danger of public injury from individuals; and as standing armies in the time of peace are dangerous to liberty, they ought not to be kept up: and that the military shall be kept under strict subordination to and be governed by the civil powers." The Supreme Court, in a landmark decision, in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008) ruled that "[t]he Second Amendment protects an individual right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home" and "that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." This landmark decision is not isolated solely to the lawful use and carry of a firearm for self defense in the home, and it should be recognized that the lawful use and carry of a firearm for self defense transcends to outside the home, where an individual's life is placed in considerable jeopardy above and beyond what may be encountered within one's home. Considering the restrictions and requirements in place in order to fulfill the State of Washington's requirement for a concealed pistol license, which in itself is unconstitutional and in violation of the Second Amendment, and considering the fact that the Plaintiff not only met those requirements and was in possession of his State of Washington issued Concealed Pistol License, as well as an out of state non-resident permit, the actions of the Washington State Patrol were in direct violation of the Plaintiff's Second Amendment Rights.

**4AA.5.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and

that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the violation of the Plaintiff's Second Amendment Rights, causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## BB.    TWENTY-EIGHTH CAUSE OF ACTION: VIOLATION OF THE FOURTH AMENDMENT, PROTECTION AGAINST ILLEGAL SEARCH AND SEIZURE

**4BB.1.** Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4BB.2.** The actions of all Defendant officers in detaining, interrogating and arresting the Plaintiff without legal cause deprived him of his Fourth Amendment rights to be free from deprivations of liberty without due process. Defendant officers, and each of them, subjected the Plaintiff to such deprivations by malice and a reckless and conscious disregard of his rights. The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of the Fourth Amendment to the United States Constitution, "which guards against unreasonable searches and seizures." Additionally, "the amendment specifically also requires search and arrest warrants be judicially sanctioned and supported by probably cause. Search and arrest should be

limited in scope according to specific information supplied to the issuing court, usually by a law enforcement officer, who has sworn by it. As paragraphs 3.1 through 3.30 indicates, no search warrants were obtained by the Defendants, in violation of the Plaintiffs Fourth Amendment Rights, and no probably cause existed upon verification of all questions to elements pertaining to the circumstantial nature of "alleged" evidence, legally owned, legally carried, legally possessed by the Plaintiff, for work, for leisure, and for lawful use.

**4BB.3.** In *Mapp v. Ohio*, 367 U.S. 643 (1961), the Supreme Court ruled that the Fourth Amendment applies to the states by way of the Due Process Clause of the Fourteenth Amendment. The Supreme Court has also ruled that certain searches and seizures violated the Fourth Amendment even when a warrant was properly granted. Furthermore, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment clearly indicates that the "people" are protected "against unreasonable searches and seizures" to which the malicious actions taken by the Defendants, were intentional and meant to "infringe" upon the rights prescribed by the Fourth Amendment, and if not intentional, the outcome of the actions following the verification that no crime had occurred, resulted in the subsequent "infringement" of the Plaintiff's protection "against unreasonable searches and seizures" which constitutes a violation of this clause by the Defendant Washington State Patrol and the aforementioned Defendants in paragraph 4BB.2.

**4BB.4.** As it pertains to "Applicability" the "Fourth Amendment specifies that any warrant must be judicially sanctioned for a search or an arrest, in order for such a warrant to be considered reasonable. Warrants must be supported by probable cause and be limited in scope according to specific information supplied by a person (usually a law enforcement officer) who has sworn by it and is therefore accountable to the issuing court. The aforementioned Defendants did not adhere to this set protocol, and violated its pre-emption by failing to abide by the defined regulations in the Constitution as well as state laws providing for similar relief.

**4BB.5.** As it pertains to "Searches" subsequently "not all actions by which governmental authorities obtain information from or about a person constitute a search. Therefore, government action triggers the amendment's protections only when the information or evidence at issue was obtained through a "search" within the meaning of the amendment. If no search occurs, no warrant is required. Generally, authorities have searched when they have impeded upon a person's reasonable expectation of privacy. In *Katz v. United States*, 389 U.S. 347 (1967), the Supreme Court ruled that the amendment covered a person's "reasonable expectation of privacy", rather than solely on whether that person's property had been intruded upon.

**4BB.6.** As it pertains to "Seizure" subsequently "the Fourth Amendment proscribes unreasonable seizure of any person, person's home (including its curtilage) or personal property without a warrant. A seizure of property occurs when there is meaningful interference by the government with an individual's possessory interests, such as when police officers take personal property away from an owner to use as evidence. The Amendment also protects against unreasonable seizure of their persons, including a brief detention. The government may not detain an individual even momentarily without reasonable, objective grounds, with few exceptions. His refusal to listen or answer does not by itself furnish such grounds. A person is seized within the meaning of the Fourth Amendment only when by means of physical force *or* show of authority his freedom of movement is restrained, and in the circumstances surrounding the incident, a reasonable person would believe that he was not free to leave."

**4BB.7.** As it pertains to "Arrest" subsequently "when a person is arrested and taken into police custody, they have been seized (e.g., a reasonable person who is handcuffed and placed in the back of a police car would not think they were free to leave). A person subjected to a routine traffic stop on the other hand, has been seized, but is not "arrested" because traffic stops are a relatively brief encounter and are more analogous to a Terry stop than to a formal arrest. A police officer does not have the authority to arrest someone for refusing to identify himself when he is not suspected of committing a crime."

**4BB.8.** As it pertains to "Warrant" subsequently "Under the Fourth Amendment, law enforcement must receive written permission from a court of law, or otherwise

qualified magistrate, to lawfully search and seize evidence while investigating criminal activity. A court grants permission by issuing a writ known as a warrant. A search or seizure is generally unreasonable and unconstitutional, if conducted without a valid warrant, and the police must obtain a warrant whenever practicable.

**4BB.9.** As it pertains to "Probable Cause" subsequently "when police conduct a search, the amendment requires that the warrant establishes probably cause to believe that the search will uncover criminal activity or contraband. In other words, they must have legally sufficient reasons to believe a search is necessary. In *Carroll v. United States* 267 U.S. 132 (1925), the Supreme Court stated that probable cause to search is a flexible, common-sense standard. To that end, the Court ruled in *Dumbra v. United States*, 268 U.S. 435 (1925), that "the term probable cause...means less than evidence that would justify condemnation[,]" reiterating *Carroll's* assertion that it merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that specific items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court ruled that the reliability of an informant is to be determined based on the "totality of the circumstances." At common law, a police officer could arrest an individual if that individual committed a misdemeanor in the officer's presence or if the officer had probable cause to believe that the individual was committing a felony. ***For misdemeanors, probable cause to believe that a wrongdoer committed a misdemeanor is not sufficient for an arrest; the police officer has to actually witness the misdemeanor.*** " Additionally, "the standards of probable cause differ for an arrest and a search. The government has a probable cause to make an arrest when "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information" would lead a prudent person to believe that the arrested person had committed or was committing a crime. Probable cause to arrest must exist before the arrest is made. Evidence obtained after the arrest may not apply retroactively to justify the arrest."

**4BB.10.** As it pertains to "Exclusionary Rule" subsequently, "one way courts

enforce the Fourth Amendment is with the exclusionary rule. The rule provides that evidence obtained through a violation of the Fourth Amendment is generally not admissible by the prosecution during the defendant's criminal trial. The Court adopted the exclusionary rule in *Weeks v. United States*, 232 U.S. 383 (1914), prior to which all evidence, no matter how seized, could be admitted in court. Additionally, in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920) and *Nardone v. United States*, 308 U.S. 338 (1939), the Court ruled that tips resulting from illegally obtained evidence are also inadmissible in trials as fruit of the poisonous tree. The rule serves primarily to deter police officers from willfully violating a suspect's Fourth Amendment rights. The rationale behind the exclusionary rule is that if the police know evidence obtained in violation of the Fourth Amendment cannot be used to convict someone of a crime, they will not violate it. In delivering the opinion of the Court, Justice Frankfurter, in *Wolf v. Colorado*, 338 U.S. 25 (1949), rejected incorporation of the Fourth Amendment by way of the Fourteenth Amendment. Later, in *Mapp v. Ohio* 367 U.S. 643 (1961), the Supreme Court explicitly overruled *Wolf* and made the Fourth Amendment (including the exclusionary rule) applicable in state proceedings as an essential part of criminal procedure."

**4BB.11.** The Bill of Rights originally only restricted the power of the federal. However, in *Mapp v. Ohio*, 367 U.S. 643 (1961), the Supreme Court ruled that the Fourth Amendment is applicable to state governments by way of the Due Process Clause of the Fourteenth Amendment. Moreover, all state constitutions contain an analogous provision. The Supreme Court ruled that some searches and seizures may violate the reasonableness requirement under the Fourth Amendment, even if a warrant is supported by probable cause and is limited in scope. The reasonableness requirement applies not just to a search in combination with a seizure, but also to a search without a seizure, as well as to a seizure without a search. Hence, the amendment is not limited to protecting elements of privacy or personal autonomy, but rather applies pervasively to virtually all aspects of criminal law. Nevertheless, the amendment does not replace other constitutional provisions, such as replacing the Eighth Amendment's ban on "cruel and unusual" punishment with a more sweeping ban on "unreasonable" punishment, making the actions of the Washington State Patrol a direct violation of the Plaintiff's Fourth

Amendment Rights.

**4BB.12.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the violation of the Plaintiff's Fourth Amendment Rights, causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**CC.    TWENTY-NINTH CAUSE OF ACTION: VIOLATION OF THE FIFTH AMENDMENT, RIGHT TO DUE PROCESS, DESTRUCTION OF EVIDENCE**

**4CC.1.** Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4CC.2.** The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of the Fifth Amendment to the United States Constitution, which "protects against abuse of government authority in a legal procedure." The Fifth Amendment dictates that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual

service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process of law*; nor shall private property be taken for public use, without just compensation," to which the aforementioned Defendants forcibly, without due cause or reason, at gunpoint, when no crime had occurred, with malice and an intent to cause fear and bodily harmed, forced the Plaintiff to disarm, removed the Plaintiff's legally owned and legally carried firearms, and illegally and without cause held said property for a time span of more then nine months, to which property of the Plaintiff was labeled as "evidence" to which said "evidence" was tampered with, and additional "evidence" such as audio and visual recordings destroyed and tampered with, to which "Due Process of Law" was denied to the Plaintiff, and yet the Defendants enacted the treatment of a convicted individual against the Plaintiff, acting illegally and in separation and contradiction to both state and federal laws pertaining to proper, ethical, and legal treatment of an individual, as it directly relates to due process and the Fifth Amendment.

4CC.3. As it pertains to "Custodial interrogation" subsequently "the Fifth Amendment limits the use of evidence obtained illegally by the law enforcement. Originally, at common law, even a confession obtained by torture was admissible. In the eighteenth century, common law in England provided that coerced confessions were inadmissible. The common law rule was incorporated into American law by the courts. However, the use of brutal torture to extract confessions was routine in some rural states as late as the 1930s, and stopped only after the Supreme Court kept overruling convictions based on such confessions, in cases like *Brown v. Mississippi*, 297 U.S. 278 (1936). Law enforcement responded by switching to more subtle techniques, but the courts held that such techniques, even if they do not involve physical torture, may render a confession involuntary and inadmissible. In *Chambers v. Florida* (1940) the Court held a confession obtained after five days of prolonged questioning, during which time the defendant was held incommunicado, to be coerced. In *Ashcroft v. Tennessee* (1944), the suspect had been interrogated continuously for thirty-six hours under electric lights. In *Haynes v. Washington* (1963) the Court held that an "unfair and inherently coercive context" including a prolonged interrogation rendered a confession

inadmissible. *Miranda v. Arizona* (1966) was a landmark case involving confessions. Ernesto Miranda had signed a statement confessing the crime, but the Supreme Court held that the confession was inadmissible because the defendant had not been warned of his rights. The Court held, "the prosecution may not use statements [...] stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Custodial interrogation is initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom of movement. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Before any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." The warning to which Chief Justice Earl Warren referred is now called the Miranda warning, and it is customarily delivered by the police to an individual upon his or her arrest."

**4CC.4.** As it pertains to *"Miranda"* Miranda "has been clarified by several further Supreme Court rulings. For the warning to be necessary, the questioning must be conducted under "custodial" circumstances. A person detained in jail or under arrest is, of course, deemed to be in police custody. Alternatively, a person who is under the *reasonable belief* that he may not freely leave from the restraint of law enforcement is also deemed to be in "custody." That determination of "reasonableness" is based on a totality of the objective circumstances. A mere presence at a police station may not be sufficient, but nor is it required. Traffic stops are not deemed custodial. Additionally, the Court ruled in *Yarborough v. Alvarado* that a suspect's age and inexperience are not objective factors required to be considered when determining whether it was reasonable for the suspect to believe that he was not free to leave during the questioning. The questioning does not have to be explicit to trigger Miranda rights. For example, two police officers engaging in a conversation designed to elicit an incriminating statement from a suspect would constitute questioning. A person may choose to waive his Miranda rights, but the prosecution has the burden of showing that such a waiver was actually

made. A confession not preceded by a Miranda warning where one was necessary cannot be admitted as evidence against the confessing party in a judicial proceeding. The Supreme Court, however, has held that if a defendant voluntarily testifies at the trial that he did not commit the crime, his confession may be introduced to challenge his credibility, to "impeach" the witness, even if it had been obtained without the warning." The actions of the Defendants in this regard, were intentional and meant to "infringe" upon the rights prescribed by the Fifth Amendment, and if not intentional, the outcome of the actions following the verification that no crime had occurred, resulted in the subsequent "infringement" of the Plaintiff's "right to due process" which constitutes a violation of this clause by the Defendant Washington State Patrol and the aforementioned Defendants in paragraph 4CC.2.

**4CC.5.** As it pertains to "Due Process" subsequently "the Fifth Amendment prevents individuals from being deprived of life, liberty, or property without "due process of law." Due process extends to all persons and corporate entities. The Fourteenth Amendment explicitly binds the states with due process protections, through selective incorporation.

**4CC.6.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the violation of the Plaintiff's Fifth Amendment Rights, causing damages in the form of

mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**DD.    THIRTIETH CAUSE OF ACTION: VIOLATION OF THE SIXTH AMENDMENT, RIGHT TO SPEEDY TRIAL**

**4DD.1.** Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4DD.2.** The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of the Sixth Amendment to the United States Constitution, under the United States Bill of Rights which sets forth rights related to criminal prosecutions in federal courts. The Supreme Court has applied the protections of this amendment to the states through the Due Process Clause of the Fourteenth Amendment. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district where in the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

**4DD.3.** As it pertains to "Confrontation" subsequently "the defense must have an opportunity to "confront" and cross-examine witnesses. The Confrontation Clause relates to the common law rule preventing the admission of hearsay, that is to say, testimony by one witness as to the statements and observations of a person to prove that the statement or observation was accurate. The rationale was that the defendant had no opportunity to challenge the credibility of and cross-examine the person making the statements. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court increased the scope of the confrontation clause in trials. Justice Scalia's opinion made any "testimonial" out-of-court statements inadmissible if the accused did not have the opportunity to cross-examine that accuser and that accuser is unavailable at trial. The right to confront and cross-examine witnesses also applies to physical evidence; the prosecution must present physical evidence to the jury, providing the defense ample

opportunity to cross-examine its validity and meaning. Prosecution generally may not refer to evidence without first presenting it."

**4DD.4.** The Defendant Washington State Patrol, and Defendant Juli Gunderman perpetrated the violation of the Sixth Amendment against the Plaintiff, following the act of arrest without warrant against the Plaintiff in direct violation of RCW 10.31.100, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and arrest without warrant immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of RCW 10.31.100, to which the Plaintiff was denied Due Process, Speedy Trial, and was forced to endure the loss of property for a time span of 9 months, despite no charges having been filed against him.

**4DD.5.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional

distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the violation of the Plaintiff's Sixth Amendment Rights, causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## EE.    THIRTY-FIRST CAUSE OF ACTION: VIOLATION OF THE EIGHTH AMENDMENT, PROTECTION AGAINST CRUEL AND UNUSUAL PUNISHMENT

**4EE.1.** Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4EE.2.** The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of the Eighth Amendment to the United States Constitution which prohibits the federal government from imposing excessive bail, excessive fines or cruel and unusual punishments. In *Louisiana ex rel. Francis v. Resweber* 329 U.S. 459 (1947), the Supreme Court assumed that the Cruel and Unusual Punishments Clause applied to the states. In *Robinson v. California*, 370 U.S. 660 (1962), the Court ruled that clause did apply to the states through the Due Process Clause of the Fourteenth Amendment. The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman, and Tom Martin all perpetrated the act of cruel and unusual punishment against the Plaintiff in direct violation of the Plaintiff's Eighth Amendment Rights as they pertain to the Fourteenth Amendment, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and arrest without warrant immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause,

and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of the Plaintiff's Eighth Amendment Rights.

    **4EE.3.** As it pertains to "Cruel and Unusual Punishment" subsequently, "the framers of the Fourteenth Amendment, such as John Bingham, had discussed this subject: [M]any instances of State injustice and oppression have already occurred in the State legislation of this Union, of flagrant violations of the guarantied privileges of citizens of the United States, for which the national Government furnished and could furnish by law no remedy whatever. Contrary to the express letter of your Constitution, "cruel and unusual punishments" have been inflicted under State laws within this Union upon citizens, not only for crimes committed, but for sacred duty done, for which and against which the Government of the United States had provided no remedy and could provide none. In *Furman v. Georgia*, 408 U.S. 238 (1972), Justice Brennan wrote, "There are, then, four principles by which we may determine whether a particular punishment is 'cruel and unusual'." The "essential predicate" is "that a punishment must not by its severity be degrading to human dignity, especially torture. A severe punishment that is obviously inflicted in wholly arbitrary fashion. A severe punishment that is clearly and totally rejected throughout society. A severe punishment that is patently unnecessary. Continuing, he wrote that he expected that no state would pass a law obviously violating any one of these principles, so court decisions regarding the Eighth Amendment would involve a "cumulative" analysis of the implication of each of the four principles."

    **4.EE.4.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher

Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the violation of the Plaintiff's Eighth Amendment Rights, as they directly pertain to the Due Process Clause of the Fourteenth Amendment, and as they relate to "Cruel and Unusual Punishment" in the Defendants actions of forced, painful, restrained detention for a time span of 7 hours, causing serious physical injuries to the Plaintiff and causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## FF.    THIRTY-SECOND CAUSE OF ACTION: VIOLATION OF THE FOURTEENTH AMENDMENT, PROVIDING EQUAL PROTECTION

**4FF.1.** Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4FF.2.** The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of the Fourteenth Amendment to the United States Constitution. Its Due Process Clause has been used to apply most of the Bill of Rights to the states. This clause has also been used to recognize: (1) substantive due process rights, such as parental and marriage rights; and (2) procedural due process rights requiring that certain steps, such as a hearing, be followed before a person's "life, liberty, or property" can be taken away. The amendment's Equal Protection Clause requires states to provide equal protection under the law to all people within their jurisdictions. Section 1 of the Fourteenth Amendment outlines that "All persons born or naturalized in the United

States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws*."

**4FF.3.** As it pertains to the "Due Process Clause" subsequently "in the past forty years it [the United States Government, and the Supreme Court] has recognized a number of "fundamental rights" of individuals, such as privacy, which the states can regulate only under narrowly defined circumstances.

**4FF.4.** The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman, and Tom Martin all perpetrated the violation of the Plaintiff's Fourteenth Amendment Rights, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and seizure, unlawful detention and unlawful imprisonment, and arrest without warrant, violating the Due Process Clause, Cruel and Unusual Punishment, and Equal Protection, immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of the Plaintiff's Fourteenth Amendment Rights.

**4FF.5.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher

Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the violation of the Plaintiff's Fourteenth Amendment Rights causing damages in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

## GG.    THIRTY-THIRD CAUSE OF ACTION: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

**4GG.1.** Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

**4GG.2.** The actions of the Defendant, Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman constitute a violation of the Civil Rights Act of 1964, which outlines under Title VI, "[the prevention of] discrimination by government agencies that receive federal funding. If an agency is found in violation of Title VI, that agency can lose its federal funding." And generally declares "it to be the policy of the United States that discrimination on the ground of race, color, or national origin shall not occur in connection with programs and activities receiving Federal financial assistance and authorizes and directs the appropriate Federal departments and agencies to take action to carry out this policy. This title is not intended to apply to foreign assistance programs. Section 601 – This section states the general principle that no person in the United States shall be excluded from participation in or otherwise discriminated against on the ground of race, color, or national origin under any program or activity receiving Federal

financial assistance. Section 602 directs each Federal agency administering a program of Federal financial assistance by way of grant, contract, or loan to take action pursuant to rule, regulation, or order of general applicability to effectuate the principle of section 601 in a manner consistent with the achievement of the objectives of the statute authorizing the assistance. In seeking the effect compliance with its requirements imposed under this section, an agency is authorized to terminate or to refuse to grant or to continue assistance under a program to any recipient as to whom there has been an express finding pursuant to a hearing of a failure to comply with the requirements under that program, and it may also employ any other means authorized by law. However, each agency is directed first to seek compliance with its requirements by voluntary means. Section 603 provides that any agency action taken pursuant to section 602 shall be subject to such judicial review as would be available for similar actions by that agency on other grounds. Where the agency action consists of terminating or refusing to grant or to continue financial assistance because of a finding of a failure of the recipient to comply with the agency's requirements imposed under section 602, and the agency action would not otherwise be subject to judicial review under existing law, judicial review shall nevertheless be available to any person aggrieved as provided in section 10 of the Administrative Procedure Act (5 USC 1009). The section also states explicitly that in the latter situation such agency action shall not be deemed committed to unreviewable agency discretion within the meaning of section 10. The purpose of this provision is to obviate the possible argument that although section 603 provides for review in accordance with section 10, section 10 itself has an exception for action "committed to agency discretion," which might otherwise be carried over into section 603. It is not the purpose of this provision of section 603, however, otherwise to alter the scope of judicial review as presently provided in section 10(e) of the Administrative Procedure Act."

**4GG.3.** The Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Juli Gunderman and Tom Martin all perpetrated the violation of the Civil Rights Act of 1964, by acting absent of good faith and with malicious intent and/or malice, by further abusing their capacity as law enforcement officers, through the acts of search without warrant, and illegal search and

seizure, unlawful detention and unlawful imprisonment, and arrest without warrant immediately following the traffic stop initiated on the date of November 3, 2007, to which the Defendants made racially derogatory remarks meant to intentionally, emotionally and psychologically harm the Plaintiff, directly relating to ethnic identity and religion, pertaining to Arabic decent and Jewish decent, and Anglo decent, additionally aggravated by the fact that the Defendants had no evidence to support their egregious allegations, no probable cause, and no legal basis in which to act in the fashion in which the acted against Plaintiff Friedmann, considering further the fact that the traffic stop itself was initiated based solely upon a third party, hearsay statement, alleging speeding, and considering the fact that this allegation was never supported by evidence or witnessed by any Washington State Trooper, the actual traffic stop itself was illegal, and following the traffic stop, all actions committed by the Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, and Tom Martin were illegal, and constituted a violation of the Civil Rights Act of 1964.

**4GG.4.** Upon later determination, and corroboration by the Plaintiff, through documentation and explanation, substantiating the fact that no crime had occurred, and that despite the fact that no crime, and no evidence of a crime existed, the Defendant Washington State Patrol, and Defendants Nicholas Casto, Robert Howson, Christopher Noll, James Meldrum, Tom Martin and Juli Gunderman proceeded in a malicious and intentionally damaging fashion to detain, arrest, restrain, question, harass, search and seize, interrogate, book, and charge the Plaintiff Friedmann with a crime which he had not committed, nor perpetrated, and to which no evidence existed substantiating any involvement of the Plaintiff to even the initial complaint and allegation of speeding made by alleged witness Randy Flores, to which these actions caused significant emotional distress to Plaintiff Friedmann and his immediate family, and that the embarrassment, humiliation and shame of Mr. Friedmann's false arrest, incarceration, fees, and loss of use of his firearms, loss of employment, loss of prospective employment, physical injuries, loss of college funding, and forced relocation, were further aggravated by the violation of the Civil Rights Act of 1963, causing damages to the Plaintiff in the form of mental pain, suffering, and disability as well as emotional distress and anxiety, in an amount to be proven at time of trial.

**HH.    THIRTY-FOURTH CAUSE OF ACTION: WASHINGTON STATE PATROL – RESPONDEAT SUPERIOR**

    **4HH.1.** Plaintiff realleges Paragraphs 3.1 through 3.31 and incorporates them herein as if set forth in full.

    **4HH.2.** In doing the things herein alleged, Defendant State Troopers were acting within the course and scope of their employment by Defendant Washington State Patrol. Defendant Washington State Patrol is therefore liable for all damages, other than punitive damages, caused by Defendant officers.

### V.  PRAYER FOR RELIEF

    **WHEREFORE,** Plaintiff, **Michael Friedmann,** prays for relief as follows:

A.    That the Court adjudge and decree that Defendants have engaged in the conduct complained of herein;

B.    For an Order of the Court for general damages for physical pain and suffering, and emotional distress and anxiety, past, present, and future;

C.    For an Order of the Court for special damages of past, present, and future medical care and treatment, wages lost, and time spent;

D.    For an Order of the Court for reasonable attorney fees pursuant to 42 U.S.C. § 1983 and any other applicable law;

E.    For an Order of the Court for punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable federal and state law;

F.    For an Order of the Court for costs and disbursements to be taxed herein; and,

G.    That the Court order such other relief as it may deem just and proper to fully and effectively dissipate the effects of the conduct complained of herein, or which may otherwise seem proper to the Court.

    **DATED** this 9 day of Dec 2009.

    /s/

Michael Alexander Friedmann

Pro Se

Michael Friedmann

16011 3rd Avenue Court East

Tacoma, Washington, 98445

(253) 459-3096